**In re Clarence Arol MOORE, Debtor.**

**Bankruptcy No. 580–00036.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Nov. 15, 1982.

James A. Walters, Walters & Associates, Lubbock, Tex., for Clarence Arol Moore, Debtor.

Edward L. Rothberg, U.S. Dept. of Justice, Tax Division, Dallas, Tex., for I.R.S.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Internal Revenue Service ("IRS") objects to the plan filed by Clarence Arol Moore,

debtor, which provides for payment of pre-petition priority tax liability of $17,109.18 in six equal annual installments of $2,851.73 each. The plan provides for no interest[1] to be paid to IRS on the deferred installments. IRS opposes confirmation of the plan whereby its debt would be paid in deferred installments unless interest on the deferred cash payments is incorporated at the rate provided by § 6621 of the Internal Revenue Code. The following summary constitutes findings of fact and conclusions of law after nonjury trial.

The first issue which is addressed by this memorandum is whether IRS is entitled to interest when its pre-petition priority tax claim is to be paid in deferred cash installments. IRS argues that its entitlement to interest on its pre-petition priority tax claim is specifically provided by 11 U.S.C. § 1129(a)(9)(C) which reflects that before a Chapter 11 plan may be confirmed the plan must provide that, with respect to § 507(a)(6) priority tax claims, the holder of that tax claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, *of a value as of the effective date of the plan equal to the allowed amount of such claim.* (emphasis added). It cites the legislative history of that provision from 124 Cong.Rec.H. 11,103 (daily ed. Sept. 28, 1978), S. 17,420 (daily ed. Oct. 6, 1978):

"Section 1129(a)(9) represents a compromise between a similar provision contained in the House bill and the Senate amendment.... Tax claims entitled to priority under § 507(a)(6) of different governmental units may not be contained in one class although all claims of one such unit may be combined and such unit may be required to take deferred cash payments over a period not to exceed six years after the date of assessment of the claim with present value equal to the amount of the claim."

1. By subsequent amendment debtor conditionally provided for payment of a discount factor of twelve percent in the event determination is made that the Code requires interest to be paid on deferred installments of priority tax liabilities. That amendment was filed without prejudice to the debtor's right to continue to insist that IRS is not entitled to receive interest on its pre-petition claim.

In light of the disclosed legislative intent a plain reading of § 1129(a)(9)(C) appears to support the contentions of IRS.

The debtor, in support of his contention that IRS is not entitled to receive interest on the deferred installments, cites the opinion of *In re Burgess Wholesale Mfg. Opticians, Inc.,* 16 B.R. 733 (Bkrtcy.N.D.Ill.1982). The court in *Burgess* had concluded that § 502(b)(2)[2] of the Bankruptcy Code prohibits the allowance of claims for unmatured interest when other unsecured creditors are not paid in full. However, I am not persuaded by the *Burgess* analysis. First, it is apparent that the prohibition of § 502(b)(2) is not an absolute. The Code specifically recognizes instances where unmatured interest may be paid, notwithstanding the language of § 502(b)(2). For instance, § 506(b) allows post-petition interest to be paid to certain creditors with secured claims and § 726(a)(5) allows payment of interest on the creditors' claims before any payment of excess to the debtor can be made. In addition to specific instances where the Code expresses that interest may be paid, there are other provisions which have been construed *by the courts* as permitting payment of unmatured interest. § 1129(b)(2)(A)(i)(II), containing language substantially similar to that in § 1129(a)(9)(C), requires that holders of secured claims shall receive deferred cash payments of a value, as of the effective date of the plan, equal to the value of the secured claim. § 1129(b)(2)(B) also contains similar language. That provision has been interpreted as requiring the payment of interest. *See In re Nitelite Inns,* 17 B.R. 367, 372 (Bkrtcy.S.D.Cal.1982) (§ 1129(b)(2)(B) contemplates a present-value analysis that will discount value to be received in the future and the pivotal question is what interest rate, or discount factor, is appropriate to bring the plan in compliance with that section.) Also § 1325(a)(5)(B)(ii), requiring that a secured claim in a Chapter 13 plan receive property equal to the value of that claim as of the effective date of the plan, has been interpreted to require payment of interest. *See In re Johnson,* 8 B.R. 503, 505 (Bkrtcy.S.D. Tex.1981) (the secured creditor must receive the value of his claim on the effective date of the plan and if the secured creditor is to receive deferred payments the creditor must be compensated for delay in payment in allowing interest on the claim.)

■ There is another reason why the application of § 502(b)(2) lacks persuasion. Section 502(b)(2), which mandates against payment of unmatured interest, is a general statute while § 1129(a)(9)(C), providing that a priority tax claimant which receives payment of his tax in deferred payments must receive value equal to the allowed amount of its claim, is a specific statute. It is a fundamental rule of statutory construction that the specific chapters of the Bankruptcy Code must be construed as governing the general chapters where a conflict of procedures or remedies exist. *Matter of Rojas,* 10 B.R. 353 (Bkrtcy.App. 9th Cir. 1981). Thus the specific language of § 1129(a)(9)(C) should prevail over the general prohibition of § 502(b)(2).

Legislative history reflects what Congress meant by use of the phrase "value as of the effective date of the plan." At H.R. Rep. 95–595, 95th Cong. 1st Sess. 414 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6370 it is stated:

"Application of the test under subparagraph (A) also requires a valuation of the consideration "as of the effective date of the plan." This contemplates a present value analysis that will discount value to be received in the future; of course, if the interest rate paid is equivalent to the discount rate used, the present value and face future value will be identical. On the other hand, if no interest is proposed to be paid, the present value will be less than the face future value."

■ It is true that this language is in reference to the treatment of secured

---

2. § 502. Allowance of claims of interest.

(b)... the Court ... shall allow such claim in such amount except to the extent that—

(2) such claim is for unmatured interest.

claims under a plan of reorganization. However, where the phrase "as of the effective date of the plan" is used in other areas of the Code, and particularly in other provisions under the same section of the Code, it is presumed that Congress intended the words to have the same meaning, absent an expressed statement to the contrary. Accordingly, Legislative history of § 1129 reflects Congressional intent that post-petition interest should be paid on deferred cash payments of unsecured priority tax claims. I conclude, therefore, that § 1129(a)(9)(C) mandates that IRS receive interest on the deferred payments of taxes.

The allowed amount of the IRS claim is $17,109.18 in this case. Therefore the deferred payments to which the United States is entitled must have a value, as of the effective date of the plan, equal to $17,109.18. The appropriate method for providing IRS with the equivalent of its value on the effective date of the plan is to provide for payment of interest. The next issue to be resolved, therefore, is that of the amount of interest to be paid.

■ IRS argues that the proper interest rate to be paid is that rate provided by § 6621[3] of the Internal Revenue Code of 1954 (26 U.S.C.) on the effective date of the plan. Its argument that the rate provided by I.R.C. § 6621 is the rate at which any taxpayer may obtain an involuntary loan from the United States by failing to pay taxes has some appeal. In theory the formula provided by § 6621 should provide a fair rate by which the equivalent of its value on the effective date of the plan can be determined. In practice, however, application of § 6621 could result in a windfall to IRS. The rate provided by § 6621 is equal to 90% of the average predominant prime rate quoted by commercial banks during September 1980. Under the provisions of § 6621 which will remain effective until January 1, 1983, that rate was calculated to be 20%. At the trial, however, the uncontradicted evidence established by the debtor was that application of a discount factor of 12% (calculated on the interest rates effective on September 22, 1982, the date of trial) would provide IRS with its equivalent value. The provisions of § 6621 which will become effective on January 1, 1983, requires the Secretary of Treasury to determine the adjusted interest rate, by calculating 90% of the average prime rate charged by major banks in periods of six months, so that the § 6621 rate will be changed on January 1 and July 1 of each year. By recalculation of the interest rate in increments of six months the rate provided by the formula under § 6621 could be a reasonable rate. However, applying the interest rate of § 6621 which is effective on the date of confirmation and which was calculated almost two years ago when the prime rate exceeded 20% will do far more than provide IRS with equivalent value. Therefore, as far as this particular claim is concerned the interest rate which will be applied on the deferred payments of the $17,109.18 tax claim of IRS is 12%, the rate adduced by the uncontradicted testimony of the debtor's expert at the trial.

It is, therefore, ORDERED by the Court that the deferred tax claim of IRS in the principal sum of $17,109.18 to be paid in six annual deferred installments be, and it is hereby, deemed entitled to interest at the rate of 12%.

**3.** § 6621. Determination of rate of interest.

(a) In general. The annual rate established under this section shall be such adjusted rate as is established by the Secretary under subsection (b).

(b) Adjustment of interest rate.—The Secretary shall establish an adjusted rate of interest for the purpose of subsection (a) not later than October 15 of any year if the adjusted prime rate charged by banks during September of that year, rounded to the nearest full percent, is at least a full percentage point more or less than the interest rate which is then in effect. Any such adjusted rate of interest shall be equal to the adjusted prime rate charged by banks, rounded to the nearest full percent, and shall become effective on February 1 of the immediately succeeding year.

(c) Definition of prime rate. For purposes of subsection (b), the term "adjusted prime rate charged by banks" means the average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System.

The debtor's plan, including the supplement to provide interest on the IRS tax claim at the rate of 12% on deferred payments, will be confirmed by separate order entered herein.

All relief not herein granted is denied.

The Clerk is directed to file this order and to furnish a copy of the order to the attorneys of record.