**In re CONNECTICUT AEROSOLS, INC., Debtor.**

**Bankruptcy No. 5–82–00338.**

United States Bankruptcy Court, D. Connecticut.

July 21, 1983.

Richard D. Zeisler, and James G. Verrillo, Zeisler & Zeisler, P.C., Bridgeport, Conn., for debtor.

Alan Nevas, U.S. Dept. of Justice, Bridgeport, Conn., for U.S. Atty.

Barry K. Stevens, U.S. Dept. of Justice, Bridgeport, Conn., for Asst. U.S. Atty.

D. Patrick Mullarkey, and Sheri Moore Humphrey, Tax Division, Dept. of Justice, Washington, D.C., for Attorneys, Tax Div., Dept. of Justice.

## MEMORANDUM AND ORDER ON DEBTOR'S MOTION FOR DETERMINATION OF INTEREST TO BE APPLIED TO TAX CLAIM [11 U.S.C. § 1129(a)(9)(C)]

ALAN H.W. SHIFF, Bankruptcy Judge.

On March 31, 1982, Connecticut Aerosols, Inc. (Debtor) filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Subsequently, the debtor filed a disclosure statement and a plan of reorganization to which the United States (Government) objected. The objection was based in part on the Debtor's proposal to pay "interest as required under applicable law" on the Government's tax claim. The Government contended that the plan's language was "sufficiently ambiguous so as to fail to indicate that interest will be paid in accordance with 26 U.S.C. § 6621,[1] and not the statutory rate under Connecticut law." Thereafter, the Government withdrew its objection pursuant to an agreement with the debtor in which the question of the applicability of 26 U.S.C. § 6621 was left open. That question has been brought back to the court's attention by the debtor's instant motion for the determination of the rate of interest to be applied to the Government's tax claim.

### II.

■ The Debtor concedes, and the court agrees, that the Government's priority tax claim in the amount of $223,241.48 is entitled to interest under 11 U.S.C. § 1129(a)(9)(C). Section 1129(a)(9)(C) provides:

(a) The court shall confirm a plan only if all of the following requirements are met

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that

(C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the

---

1. At the time of the confirmation hearing held on November 16, 1982, 26 U.S.C. § 6621(b) provided

> The secretary shall establish an adjusted rate of interest for the purpose of subsection (a) not later than October 15 of any year if the adjusted prime rate charged by banks during September of that year, rounded to the nearest full percent, is at least a full percentage point more or less than the interest rate which is then in effect. Any such adjusted rate of interest shall be equal to the adjusted prime rate charged by banks, rounded to the nearest full percent, and shall become effective on January 1 of the immediately succeeding year.

That section, as amended, currently provides in pertinent part

> (1) ... If the adjusted prime rate charged by banks (rounded to the nearest full percent)—
> (A) during the 6-month period ending on September 30 of any calendar year, or
> (B) during the 6-month period ending on March 31 of any calendar year, differs from the interest rate in effect under this section on either such date, respectively, then the Secretary shall establish, within 15 days after the close of the applicable 6-month period, an adjusted rate of interest equal to such adjusted prime rate.

effective date of the plan, equal to the allowed amount of such claim.

This section represents a departure from the former law which did not permit the payment of tax claims over a period of time. 3 *Norton Bankruptcy Law and Practice* § 63.20 at part 63—page 20 (1981). As is clear from both the language of section 1129(a)(9)(C) and its legislative history, the debtor's right to defer payments is not to be at the expense of the claimant's right to receive the full amount of his allowed claim.

> Tax claims entitled to priority under 507(a)(6) ... may be required to take deferred cash payments over a period not to exceed 6 years after the date of assessment of the tax with *the present value equal to the amount of the claim.* [emphasis added]

124 Cong.Rec. H 11,103 (daily ed. Sept. 28, 1978); 124 Cong.Rec. 17,420 (daily ed. Oct. 6, 1978). Thus, interest must be applied to the Government's claim to assure that it receives the value equal to the allowed amount of its claim despite the deferred payments. *In re Bay Area Services,* 26 B.R. 811, 10 B.C.D. 101 (Bkrtcy.M.D.Fla.1982); *In re Moore,* 25 B.R. 131, 9 B.C.D. 1246 (Bkrtcy.N.D.Tex.1982). *But see In re Burgess Wholesale MFG Opticians, Inc.,* 16 B.R. 733 (Bkrtcy.N.D.Ill.1982).

## A.

### Effective Date of Plan

■ Before turning to the issue of how the required interest rate should be calculated, I must determine the effective date of the plan within the meaning of 11 U.S.C. § 1129(a)(9)(C). This question is important because the order of confirmation rendered on November 16, 1982 is presently on appeal to the district court. If the plan was not effective at the time of confirmation, then the applicable interest rate under 11 U.S.C. § 1129(a)(9)(C) cannot be calculated.

The debtor, in its Memorandum of Law, observed that most courts have used the confirmation date as the effective date.

**2.** *In re Information Dialogues, Inc.,* 662 F.2d 475 (8th Cir.1981); *In re Roberts Farms, Inc.,*

The Government did not discuss this issue in its Memorandum of Law and the Bankruptcy Code is silent on this question. *See* 3 *Norton on Bankruptcy, supra,* § 63.15 at part 63—page 19.

In this case, the Plan of Reorganization defines Effective Date as follows:

> Effective date shall mean the first business day following the last day on which an appeal from an Order of the Court confirming this Plan may be taken under applicable law and no such appeal has been taken or if such an appeal has been taken, the first business day following the date upon which such appeal has been exhausted and the Plan may proceed.

Although a plan may proceed despite a pending appeal from its confirmation order,[2] the plain intent of the definition here is to delay the effective date until any appeal has been resolved. Accordingly, the court cannot now fix the interest rate as required under section 1129(a)(9)(C) but will nevertheless rule on the proper standard to be employed if and when a plan becomes effective.

## B.

### Interest Rate

■ The debtor argues that the rate established by 26 U.S.C. § 6621 is not indicative of current economic conditions. Instead, the debtor offers to pay interest pursuant to 28 U.S.C. § 1961(a). That section, which governs rates for interest on federal judgments provides in pertinent part:

> Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price of the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

652 F.2d 793 (9th Cir.1981).

Although the courts have applied various methods for determining the proper interest rate under section 11 U.S.C. § 1129(a)(9)(C) [3] and the materially similar 11 U.S.C. § 1325(a)(5)(B)(ii),[4] I will confine my discussion to the alternatives urged by the parties.

In apparently the only circuit court decision to address the method for determining the appropriate interest rate under section 1129(a)(9)(C), the application of section 6621 was rejected. *In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (5th Cir.1983). In pertinent part, the court in *Southern States* first looked to 5 *Collier on Bankruptcy*, ¶ 1129.03 at 1129–65 (15th ed. 1982) for the factors implicated by section 1129(a)(9)(C). The portion of the treatise quoted by the court reads

> The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

The court then observed that the section 6621 rate does not necessarily reflect the "prevailing market rate" and that the automatic application of section 6621 ignores the possibility of variation in the factors relevant to determining the appropriate interest rate. The court finally indicated that section 6621 was, at best, evidence of the prevailing market rate.

The rejection of the section 6621 rate in *Southern States* is consistent with the prevailing view of the bankruptcy courts which have considered this question. *In re Bay Area Services, supra; In re Moore, supra; In re Tacoma Recycling*, 23 B.R. 547 (Bkrtcy.N.D.Wash.1982). *See also In re Fisher*, 29 B.R. 542, 549 (Bkrtcy.D.Kan.1983) ("§ 6621 does not provide an accurate discount rate in Chapter 13 cases for the IRS secured claims or any other creditor's secured claim").

The only decision presented by the parties or discovered by the court, which adopts the section 6621 rate for 11 U.S.C. § 1129(a)(9)(C) is *In re Hathaway Coffee House*, 24 B.R. 534, 9 B.C.D. 1093 (Bkrtcy.S.D.Ohio 1982). In that decision, however, upon which the Government heavily relies, the court did not attempt to explain the economic justification for the section 6621 rate but rather noted the absence of any contrary position from the debtor.

The rate proposed by the debtor here, however, has the virtue of being "more closely tied to current economic conditions at the time of confirmation of a Chapter 11 Plan of Reorganization." *In re Tacoma Recycling, Inc., supra* at 550. The court in *Tacoma* noted that the method for establishing an interest rate in 28 U.S.C. § 1961(a) was arrived at after consideration of the method employed by section 6621, which was criticized by the Office of Management and Budget as being too static. *Id.* The rate under 28 U.S.C. § 1961(a), on the other hand, is fixed every four weeks.

Given the two alternatives presented by the parties here and the lack of any evidence suggesting that a different rate might be appropriate under the circumstances of this case, I find that the rate established by 28 U.S.C. § 1961(a) will best

---

3. *In re Southern States Motor Inns, Inc.*, 709 F.2d 647 (5th Cir.1983) (looking largely to expert's testimony at trial); *In re Bay Area Services*, 26 B.R. 811, 10 B.C.D. 101 (Bkrtcy.M.D.Fla.1982) (prevailing prime rate plus 10% adjustment for inflation); *In re Hathaway Coffee House, Inc.*, 24 B.R. 534, 9 B.C.D. 1093 (Bkrtcy.S.D.Ohio 1982) (26 U.S.C. § 6621 rate); *In re Moore*, 25 B.R. 131, 9 B.C.D. 1246 (Bkrtcy.N.D.Tex.1982) (rate adduced by the uncontradicted testimony of debtor's expert at trial); *In re Tacoma Recycling, Inc.*, 23 B.R. 547 (Bkrtcy.W.D.Wash.1982) (28 U.S.C. § 1961(a) rate).

4. Many cases have arisen under 11 U.S.C. § 1325(a)(5)(B)(ii), which in pertinent part employs language identical to 11 U.S.C. § 1129(a)(9)(C). *E.g., In re Moore*, 29 B.R. 27 (Bkrtcy.D.Colo.1983) (13.5% based on testimony and judicial notice of other rates of interest); *In re Klein*, 10 B.R. 657 (Bkrtcy.E.D.N.Y.1981) (averaging state legal rate and rate set forth in contract); *In re Kauffunger*, 16 B.R. 666 (Bkrtcy.D.N.J.1981) (contract rate); *In re Crockett*, 3 B.R. 365 (Bkrtcy.N.D.Ill.1980) (contract rate); *In re Ziegler*, 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980) (26 U.S.C. § 6621 rate).

provide the Government with the full amount of its allowed claim.

Accordingly, it is ORDERED that the debtor must, under its Plan of Reorganization, pay interest on the Government's priority tax claim at a rate established by 28 U.S.C. § 1961(a), if and when the debtor's Plan of Reorganization becomes effective.