**In re CONNECTICUT AEROSOLS, INC., Debtor.**

**No. Civ. B 83–567(WWE).**

United States District Court, D. Connecticut.

Aug. 24, 1984.

Richard D. Zeisler, James G. Verrillo, Zeisler & Zeisler, Bridgeport, Conn., for Conn. Aerosols.

Alan Nevas, Barry Stevens, Asst. U.S. Atty., Bridgeport, Conn., D. Patrick Mullarkey, Reba A. Raffaelli, Tax Div., Dept. of Justice, Washington, D.C., for the IRS.

EGINTON, District Judge.

## RULING ON APPEAL

Connecticut Aerosols, Inc., debtor and appellee, filed a petition for relief under Chapter 11 in March of 1982. The IRS filed an amended proof of claim for an unsecured priority tax claim of $159,632.08. The Debtor's Plan of Reorganization provides for full payment of the IRS claim over a six year period, with interest at an unspecified rate. The Bankruptcy Judge confirmed the plan on November 6, 1982.

Following confirmation, the parties filed briefs on the issue of what rate of interest should apply. The debtor proposed the Treasury bill rate codified in 28 U.S.C. § 1961(a) ("§ 1961(a) rate"). The IRS proposed the rate imposed upon delinquent taxpayers by Internal Revenue Code § 6621, 26 U.S.C. § 6621 ("§ 6621 rate").

Of these two rates, Judge Shiff chose the § 1961(a) rate, finding that it better reflects current economic conditions and would "best provide the Government with the full amount of its allowed claim." 31 B.R. 883 (Bankr.Conn.1983). Memorandum and Order on Debtor's Motion for Determination of Interest to Apply to Tax Claim, dated July 21, 1983, hereinafter cited as Memorandum and Order, at 7–8. The IRS has appealed, arguing that this decision is

erroneous as a matter of law, since the IRS is entitled to interest at the § 6621 rate.

## STATUTORY PROVISIONS

■ Section 1129(a)(9)(C) of Title 11 lists the requirements for confirmation of a debtor's reorganization plan, when, as here, payment of a tax claim is deferred. This section requires that the creditor receive "deferred cash payments, over a period not exceeding six years ... of a value, as of the effective date of the plan, equal to the allowed amount of such claim." The issue raised by this appeal is whether the interest rate selected by the Bankruptcy Judge fails to give the creditor (the IRS) the value of its claim within the meaning of this section.[1]

## "VALUE" UNDER SECTION 1129(a)(9)

■ The parties and the courts agree that § 1129(a)(9) is intended to compensate the creditor for deferral of its claim by adopting a "present value" analysis.[2] The parties also agree that the proper way to give the creditor present value is to order the payment of interest by the debtor, to compensate for the delay in payment.

■ To select an interest rate which will give present value, the court must consider prevailing market interest rates. *See, e.g., In re Tacoma Recycling, Inc.,* 23 B.R. 547, 549 (Bankr.W.D.Wash.1982) (§ 6621 rate proposed by IRS and rate proposed by debtor "must be compared to the current money market to determine if either proposed rate is responsive to current economic conditions ..."). The IRS concedes that an § 1129(a)(9) interest rate must be set by reference to market conditions. However,

---

**1.** The IRS raises for the first time on appeal an issue as to the effective date of the plan. The record shows no previous objection to this feature of the plan, and the IRS failed to raise the issue before the Bankruptcy Judge, The Honorable Alan H.W. Shiff, on the motion for determination of interest. Memorandum and Order at 2. Finally, the IRS did not list this issue in its statement of issues on appeal as required by Bankruptcy Rule 8006. Accordingly, the issue is not properly before the court.

**2.** The legislative history confirms this interpretation.

"Value, as of the effective date of the plan," as used in paragraph (3) and in proposed 11 U.S.C. 1179(a)(7)(B), 1129(a)(9), [and other sections] indicates that the promised payment under the plan *must be discounted to present value* as of the effective date of the plan ... H.R.Rep. No. 595, 95th Cong., 2d Sess. 408, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6364 (emphasis added).

the IRS argues that when the IRS is the creditor, the market rate is by definition the § 6621 delinquency rate.

The IRS's argument rests upon the so-called "coerced loan theory." Under this theory, when payment of a creditor's claim is deferred, he is effectively making a "loan" of money to the debtor. The court must determine what rate of interest to apply to this "loan." To do this, the court looks to the marketplace for the current rate of interest on similar loans.

Where the IRS is the creditor, it claims that the only "similar loans" involve situations in which the IRS is owed money by taxpayers. Taxpayers who are delinquent in paying their taxes obviously owe money to the IRS. Since the § 6621 rate applies to such taxpayers, it should apply to the coerced loan under Chapter 11. Thus, the IRS concludes, whenever the IRS is a creditor of a debtor in bankruptcy, the debtor must pay interest at the same § 6621 rate applicable to delinquent taxpayers.

Although this argument is superficially plausible, on close examination it cannot stand. The central premise of the theory is the equation of the debtor in bankruptcy, who is seeking help under remedies created for him by Congress, and whose deferred payments have been approved by a Bankruptcy Judge, and the delinquent taxpayer who, for any reason or no reason, fails to pay the taxes Congress has required him to pay. The substantial difference between these two transactions cannot be glossed over by labelling each a "loan."

This difference is reflected in the purposes of interest payments in each case. The only function of § 1129(a)(9) interest is to compensate the creditor for late payment. The § 6621 delinquency rate incorporates additional elements, among them, deterrence and sanction.

Bankruptcy courts have noted this difference in purpose. In a meticulous opinion on the bankruptcy interest issue in a Chap-

ter 13 context[3], the court in *In re Fisher*, 29 B.R. 542, 545 (Bankr.D.Kan.1983), rejected the § 6621 rate in favor of the § 1961(a) rate plus one percent. The court noted that the coerced loan theory rests upon business assumptions which do not apply to the IRS:

[T]he court questions the applicability of a coerced loan theory to the IRS. The IRS does not "lend" money. There are virtually no creditors similar to the IRS in the marketplace to whom the IRS can be compared. A contract rate of interest [as on a loan contract] "contemplates a rate determined in a marketplace in which buyers and sellers are free to bargain." Comment, Cramdown, 1981 Wisc. L.Rev. at 356 n. 128. There is no bargain for the average taxpayer on the rate of interest charged by the IRS. It is set by statute based upon a weighted average of the prime.

Further,

The IRS does not set its § 6621 rate of interest based on any of the advocated factors such as duration, collateral, and risk of default. The IRS has determined that its rate of interest must be high enough to deter tax evasion, restrict creative tax avoidance, and to compel timely tax payment and reporting. These are not marketplace factors.

The court in *In re Bay Area Services*, 26 B.R. 811, 814 (Bankr.M.D.Fla.1982) held:

Whereas the [§ 6621] rate may be particularly appropriate when assessed against delinquent federal tax claims, it looms static and arbitrary when applied to the deferred payment of an unsecured priority tax claim where the primary intent is provide [sic] the Government with a future amount equal in value to an amount paid in full upon the effective date of the Chapter 11 Plan of Reorganization.

*Accord In re Southern States Motor Inns*, 709 F.2d 647, 656 n. 7 (11th Cir.1983) (Even under involuntary loan theory advanced by

---

3. The Chapter 13 provisions under which interest is awarded are substantially identical to the Chapter 11 provision at issue here. *E.g.*, 11 U.S.C. §§ 1325(a)(5)(B)(ii), 1325(a)(4), provid-

ing that a plan may not be confirmed unless the creditor receives "value, as of the effective date of the plan."

one commentator, § 6621 rate not exclusive measure of rate which will give government value of claim.)

Moreover, insofar as the § 6621 rate is based upon the prime rate, it incorporates other elements beyond compensation for deferred payment, including transactional costs and profit. In contrast to the ordinary commercial situation, in Bankruptcy proceedings:

> attendant costs of collection such as garnishment, attachment, self-help repossession, and the draw backs of attempting to collect such as racing to the courthouse to garnish a debtor's wages before other creditor's [sic] garnish wages are eliminated. The costs of finding the debtor, obtaining a judgment, ordering him into court to aid in execution, keeping track of the debtor and having little or no control over a judgment-proof debtor (high risk debtor) and little or no means to force payment on a regular basis from someone who does not want to, or cannot pay are eliminated. There are also no costs of dunning or billing . . .

*In re Fisher*, 29 B.R. 542, 544 (Bankr.D. Kan.1983).

The profit component of the prime rate is likewise inappropriate in the bankruptcy context. As *Fisher* noted:

> [T]he element of profit is built into the interest rate charged by creditors. A creditor profits from the interest it charges.

> . . . . .

> [M]any courts have stated that the discount rate is not intended to give *any creditor* a profit. Thus the element of profit should be removed from the con-

tract rate, particularly in reference to the IRS which is not in the business of earning profits.

*Id.* at 545. This reasoning demonstrates that the prime-based § 6621 rate cannot uncritically be applied to compute present value for bankruptcy purposes.

Finally, the IRS demand for automatic § 6621 interest misconceives the nature of the Congressional mandate in § 1129(a)(9). If Congress had wanted the IRS to receive the § 6621 rate as a matter of course, a provision so stating could easily have been inserted in the statute. No such provision appears.[4] As the Eleventh Circuit recently noted, Congress chose the same interest standard for a wide variety of creditors. The IRS is no better or worse off than a worker with a claim for unpaid wages, or a family which paid for household services they never received. *See* 11 U.S.C. §§ 1129(a)(9)(B), 507(a)(3)–(5).

> [T]he phrase "value, as of the effective date of the plan" appears in several other subsections of § 1129 as well as in Chapter 13, see 11 U.S.C. §§ 1129(a)(7)(B), (a)(9)(B)(i), (b)(2)(A)(i)(II), (b)(2)(B)(i), (b)(2)(C)(i), 1325(a)(4), (a)(5)(B)(ii), and applies to a wide variety of claims. Neither the statute nor the legislative history suggests that "value" as used in § 1129(a)(9)(C) should be determined simply by reference to § 6621 while "value" as used in the other sections should be determined by an analysis of market rates, and we seriously doubt that Congress intended that the § 6621 rate should be used to determine value in all of these sections.

*In re Southern States Motor Inns, Inc.*, 709 F.2d 647, 652 n. 6 (11th Cir.1983); ac-

---

**4.** The IRS suggests that if § 1129(a)(9)(C) allows judges to assign a rate other than the § 6621 rate, taxpayers will file for bankruptcy to get a lower rate on their tax debts. The court finds this scenario extremely speculative. First, the market rate selected pursuant to § 1129(a)(9)(C) need not always be lower than the § 6621 rate. Depending upon changes in the market since the § 6621 rate was fixed, the market rate could be higher than the § 6621 rate. The court doubts that such a problematic chance of a lower rate would induce persons to take the

far-reaching step of filing for bankruptcy. Second, even if some persons should do so, the court cannot assume that Bankruptcy Judges lack the expertise and perception to distinguish between a debtor who files in good faith and a recalcitrant taxpayer who files a sham bankruptcy to manipulate an interest rate. In any event, this policy argument should properly be addressed to the legislature. This court has no authority to limit the scope of § 1129(a)(9)(C) interest rates.

cord *In re Moore,* 25 B.R. 131 (Bankr.N.D. Tex.1982) (Although involuntary loan theory has some appeal, § 6621 rate of 20% inappropriate where evidence showed 12% rate would give IRS full value of deferred claim).

In the *Southern States* case, *supra,* the Eleventh Circuit considered the precise issue on appeal in this case: the proper method for determining interest to be paid to the IRS under § 1129(a)(9)(C). The court rejected the position taken by the IRS here, holding that the IRS is not automatically entitled to bankruptcy interest at the § 6621 delinquency rate.

The court noted that the purpose of interest under § 1129(a)(9)(C) is to provide the creditor with the present value of its claim, and cited the relevant discount rate factors such as duration, quality of the security, and risk of default. The court then ruled:

> The interest rate computed under the formula set out in 26 U.S.C. § 6621 does not meet this [sic] criteria for two reasons. First, the § 6621 rate does not necessarily correspond with the "prevailing market rate." ... Even with the recent amendments to § 6621 [to change the rate more frequently] *see id.,* the § 6621 rate in effect on the date of a confirmation hearing will have been established from three and one-half to nine and one-half months previously.

**5.** Potential for such a difference exists here. At the confirmation hearing on November 16, 1982, the § 6621 rate was 20%, based on the adjusted prime rate for September 1981, over a year before the hearing. The § 1961(a) rate was 9.29%, based on the Treasury bill auction on October 28, 1982, nineteen days before the hearing. The interest rate is not fixed as of the confirmation date in this case because the confirmed plan provides for a different effective date. However, the large gap between the year old § 6621 rate and the newly calculated § 1961(a) rate illustrates the inadequacy of the § 6621 rate as an exclusive guide to prevailing market rates.

**6.** This ruling is consistent with many of the decisions cited by the IRS in which courts have chosen to apply the § 6621 rate. If, under current economic circumstances and the individual circumstances of a case, the court finds that the

709 F.2d at 651–652. As the court concluded, "In view of recent fluctuations in interest rates, it is obvious that the § 6621 rate often will differ significantly from actual market rates." *Id.* at 652;[5] *accord, In re Tacoma Recycling, Inc.,* 23 B.R. 547, 550 (Bankr.W.D.Wash.1982) (Rejecting § 6621 rate as an "arbitrary and artificial rate", which was "static during a period in which there was significant fluctuation" in interest rates.)

In addition, the court held that applying the § 6621 rate to all deferred payments ignores individual circumstances of each claim. The court noted that the potential variations, while slight, were significant enough to render a single interest rate inappropriate for every case. 709 F.2d at 652, n. 6.

Based upon the language of 11 U.S.C. § 1129(a)(9)(C) and the other Bankruptcy Code provisions cited above, the legislative history of these provisions, the reasoning of the Eleventh Circuit in *In re Southern States, supra,* and the other decisions cited above, the court rules that § 1129(a)(9)(C) does not automatically entitle the IRS to the § 6621 delinquency interest rate.[6]

### THE § 6621 RATE VERSUS THE § 1961(a) RATE

■ The question remains whether in this particular case the § 6621 rate is more appropriate than the § 1961(a) rate chosen by Judge Shiff.[7] The present value analy-

§ 6621 rate accurately reflects the prevailing market rate, or is the best of the rates suggested by the parties, application of the § 6621 rate could then be appropriate. *E.g., In re Hathaway Coffee House, Inc.,* 24 B.R. 534, 536 (Bankr.S.D. Ohio 1982) (§ 6621 rate sought by IRS applied "in the absence of a contrary position by the debtor"); *In re Nite Lite Inns,* 17 B.R. 367, 373 (Bankr.S.D.Cal.1982) (In non-tax case, § 6621 rate applies "absent a showing that [it] is not indicative of then-existing economic conditions"). What the court rejects here is the IRS contention that it is entitled to receive the § 6621 rate in every case, without any inquiry into economic conditions or prevailing interest rates.

**7.** Judge Shiff considered only the two interest rates proposed by the parties, finding that there was no evidence that another rate was appropriate under the circumstances. On appeal, nei-

sis required by § 1129(a)(9)(C) entails evaluation of current economic conditions and market rates. This is primarily if not exclusively a factual inquiry. Judge Shiff performed this inquiry ably and succinctly in his Memorandum and Order, in which he compared the two interest rates proposed by the parties, and found the § 1961(a) rate more appropriate.

The IRS has not disputed the factual finding that the § 1961(a) Treasury bill rate better reflects general market conditions than does the § 6621 rate.[8] In fact, the IRS concedes that the § 1961(a) rate chosen by Judge Shiff is "a plausible estimation of present value." United States Brief on Appeal at 11. However, the IRS argues that subsection (c) of § 1961 bars its use as the appropriate discount interest rate in a bankruptcy case where the IRS is the creditor.

### 28 U.S.C. § 1961(c)(1)

Section 1961(a) provides the interest rate on judgments in United States District Courts. The rate is tied to the average accepted auction price for the most recent auction of Treasury bills as of the entry of judgment. 28 U.S.C. § 1961(a). Subsection (c)(1) provides: "This section shall not apply in any judgment of any court with respect to any internal revenue tax case. Interest shall be allowed in such cases at a rate established under section 6621 of the Internal Revenue Code of 1954." 28 U.S.C. § 1961(c)(1). Based upon this subsection, the IRS argues that "the T-bill interest rate should not be applied with respect to bankruptcy cases involving internal revenue taxes." United States Brief on Appeal at 11.

The IRS argument is misplaced. This is not an "internal revenue tax case." There is no dispute over the computation of tax or whether tax is owed. This is a Chapter 11 bankruptcy case in which one creditor happens to be the IRS. Regardless of the identity of the creditor, the Chapter 11 purpose remains the same: to select an interest rate that will provide the creditor with the present value of his claim.

Nothing in § 1961(c)(1) purports to limit the scope of the § 1129(a)(9) inquiry. If, after surveying market conditions and interest rates, a judge determines that the Treasury bill rate codified in § 1961(a) best reflects prevailing market rates, § 1129(a)(9) requires him to apply that rate to the creditor's claim. In such a case, the judge applies the § 1961(a) rate not because it was enacted in § 1961(a), but because it provides the creditor with the present value of his claim.[9] The fact that the Treasury bill rate was codified by statute for certain purposes does not remove it from the universe of rates which may be considered by the Bankruptcy Judge for § 1129(a)(9)(C) purposes.

Accordingly, Judge Shiff, having found that the § 1961(a) rate would best approximate market conditions and provide the IRS with the value of its claim as of the effective date of the plan, properly used that rate as the discount rate under § 1129(a)(9)(C).

### CONCLUSION

For all of the foregoing reasons, the decision of Judge Shiff should be and hereby is AFFIRMED.

---

ther party has claimed this was error, or sought a rate other than the proposed rates.

**8.** The IRS presented no arguments on appeal concerning the comparative market suitability of the two rates, other than its argument that the § 6621 rate is the *per se* market rate in any case in which the IRS is a creditor.

**9.** An analogous situation would be one in which § 1961(a) set a fixed rate of 10% for interest on federal judgments. Under the IRS argument, a Bankruptcy Judge who had decided that 10% was an appropriate discount rate would be barred from using that rate simply because § 1961(a) uses it. The court has been directed to nothing in the text or legislative history of § 1961(a) which would support such a result.