In re Samuel and Alice DeSARNO,
Debtors/Movants,

v.

COUNTY OF ALLEGHENY, Respondent.

Bankruptcy No. 93–22234 JLC.

United States Bankruptcy Court,
W.D. Pennsylvania.

May 13, 1994.

Gary J. Gaertner, Pittsburgh, PA, Chapter 13 Trustee.

Daniel J. Gates, Pittsburgh, PA, for debtors.

Michael G. McCabe, Pittsburgh, PA, for Allegheny County and Penn Hills.

## *MEMORANDUM OPINION*

JOSEPH L. COSETTI, Bankruptcy Judge.

The issue before the court is whether a Chapter 13 debtor can modify the postpetition interest rate claimed by an oversecured statutory lien creditor without violating 11 U.S.C. §§ 1322(b)(2), 1325(a)(5)(B)(ii) and 506(b). After careful consideration, the issue is determined in the affirmative.

## I. *FACTS*

Samuel and Alice DeSarno ("Debtors") defaulted on their real estate taxes owed to Allegheny County, the Penn Hills Municipality and the Penn Hills School District (hereinafter referred to collectively as the "Claimants"). In order to avoid foreclosure, the Debtors filed a voluntary petition under

Chapter 13 of the Bankruptcy Code on June 25, 1993. On July 13, 1993, the Debtors filed a Chapter 13 plan that proposes to pay 100% of the principal outstanding taxes due to the Claimants, in addition to all prepetition interest claimed. The Debtors' Chapter 13 plan also proposes to pay 100% of the Claimants' postpetition principal claim; however, the plan modifies the Claimants' claims by proposing to pay a reduced postpetition interest rate amount.[1]

On September 16, 1993, an order was entered confirming the Chapter 13 amended plan subject to the resolution of these tax claims. On November 17, 1993, the plan was confirmed subject to *inter alia*, the resolution of the amount of postpetition interest due the Claimants. At the confirmation hearing, the Claimants objected to their postpetition treatment alleging that they were entitled to receive 12% and 10% interest on their claims pursuant to the Pennsylvania Municipal Code. The Debtors objected and argue that 11 U.S.C. § 1322(b)(2) permits the Claimants' claims to be modified and further, that the Claimants should only be paid a "reasonable" interest rate rather than the statutory rates.

## II. *DISCUSSION*

### A. *Prepetition Interest*

■ Generally in bankruptcy, interest on prepetition claims stops accruing as of the bankruptcy filing. 11 U.S.C. § 502(b)(2). The Debtors concede that the Claimants are entitled to prepetition interest at the statutory rate, and they propose in their Chapter 13 plan to make 100% payment of the Claimants' prepetition claims, both principal and interest.

Pursuant to 72 Pa.S.A. § 5648, Allegheny County, as a second class county in the Commonwealth of Pennsylvania,[2] may claim interest on all delinquent taxes "at a rate determined by the county commissioners not to

exceed twelve per centum per annum until paid, . . ." 72 Pa.S.A. § 5648 (Purdon's 1990). Therefore, a legislative cap exists so that Allegheny County cannot charge its residents more that 12% for unpaid taxes. This also means that Allegheny County has the authority to charge something *less* than 12%; however, the County Commissioners in their discretion have chosen to charge the maximum amount.

Title 53 Pa.S.A. § 7143 dictates that interest claims made by municipalities for unpaid taxes cannot exceed ten percent per annum. 53 Pa.S.A. § 7143 (Purdon's 1972). Therefore, the municipality of Penn Hills and its school district may charge their delinquent tax payers a maximum of 10% interest for unpaid taxes.

■ Neighborhood Legal Services Association ("NLSA") filed a brief in the instant case which asserts that these two statutory provisions "clash." Specifically, NLSA argues that because 72 Pa.S.A. § 5648 and 53 Pa.S.A. § 7143 maintain different statutory interest rate guidelines, they conflict, and that the language of 53 Pa.S.A. § 7143 preempts 72 Pa.S.A. § 5648. Consequently, NLSA argues that Allegheny County could only charge the Debtors a maximum of 10% interest, and not 12%.

The language NLSA points to in support of its argument is as follows:

Where the provisions of *any other act* relating to claims for taxes . . . utilizes the procedures provided in *this act* and where the provisions of *such other act* establishes a different rate of interest for such claims or liens the maximum rate of interest of ten percent per annum as provided for in this section shall be applicable to the claims and liens provided for under such acts. . . . (emphasis added)

53 Pa.S.A. § 7143.

This language attempts to reconcile the various interest rates established within the

---

1. The Debtors do not dispute that they owe the Claimants the following amounts in taxes:

   1) Allegheny County: $ 521.19  prepetition
   $1,140.04  postpetition
   2) Penn Hills
   Municipality: $ 687.99  postpetition

   3) Penn Hills School
   District: $1,435.24  prepetition
   $1,548.10  postpetition

2. The counties in Pennsylvania are divided into 9 separate classes, each classification being based upon the population of the county. 16 Pa.S.A. § 3210. Allegheny County is classified as a second class county. *Id.*

same *act*, which in this case is the Municipal Claims Act of 1923, as amended 1981. Section 5648 is not within this same act. In fact, 72 Pa.S.A. § 5648 is in an entirely different title of the Pennsylvania Code. Furthermore, 72 Pa.S.A. § 5648 specifically states in its title that it applies to counties of the second class in the Commonwealth of Pennsylvania, of which Allegheny County is the only county.

In addition, municipal and school taxes are different than county taxes, serving different purposes and providing different services as well as sources of funding. Therefore, NLSA's argument that 53 Pa.S.A. § 7143 and 72 Pa.S.A. § 5648 conflict is without merit. A state court is welcome to address this issue. For this case, the court finds that Allegheny County has the authority under the state statute to charge its residents interest for unpaid taxes in an amount not to exceed 12%. Below, this court will address whether a debtor can modify this interest rate in a Chapter 13 plan.

## B. *Postpetition Interest*

Although interest on prepetition claims generally stops accruing as of the bankruptcy filing, 11 U.S.C. § 502(b)(2), there is an exception in the Bankruptcy Code when the value of the collateral is sufficient to satisfy both principal and interest due on a claim. 11 U.S.C. § 506(b). Section 506(b) states as follows:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which the claim arose.

11 U.S.C. § 506(b).

■ Section 506(b) authorizes the payment of postpetition interest to oversecured creditors. In *U.S. v. Ron Pair*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), the

United States Supreme Court held that 11 U.S.C. § 506(b) authorizes payment of postpetition interest on *nonconsensual* oversecured prepetition claims.[3] In general, the interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective date of the plan. 3 Collier on Bankruptcy ¶ 506.05, p. 506–43 (15th ed. 1993). In *Rake v. Wade*, —— U.S. ——, ——, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993), the Supreme Court held that 11 U.S.C. § 1325(a)(5)(B)(ii) further entitles oversecured creditors to post confirmation interest.

■ In the instant case, all three Claimants are oversecured statutory (nonconsensual) lien creditors. Therefore, based on *Ron Pair* and *Rake v. Wade*, the Claimants are entitled to pre and post confirmation interest on their respective claims. However, although the Claimants are entitled to interest, the court must determine whether the Claimants are entitled to the statutory rate of interest, or if the Debtors may reduce the claimed interest rates in their Chapter 13 plan, thereby modifying the claims. Put another way, if the Debtors reduce the Claimants' postpetition interest claims, the court must determine whether such a modification violates 11 U.S.C. § 1322(b)(2). If the Debtors can modify the Claimants' claim for interest without violating § 1322(b)(2), the court must then decide what rate of interest is appropriate.

### 1. *Modification Pursuant to § 1322(b)(2)*

■ Under the Bankruptcy Code, a Chapter 13 plan may modify the rights of a secured claimant, but the plan may not do so if the creditor's claim is secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). This principal has been confirmed by the courts, most notably by the U.S. Supreme Court in *Nobelman vs. American Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Section § 1322(b)(2) states as follows:

---

**3.** In *Ron Pair*, the Supreme Court held that the United States was entitled to postpetition interest on its nonconsensual tax liens for unpaid withholding and social security taxes. *Id.,* 489 U.S.

at 237–38, 109 S.Ct. at 1028–29. *See also Rake v. Wade*, —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).

**(b)** Subject to subsections (a) and (c) of this section, the plan may—

**(2)** modify the rights of holders of *secured claims*, other than a claim secured only by a *security interest* in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; (emphasis added)

11 U.S.C. § 1322(b)(2).

The task of resolving the dispute over the meaning of § 1322(b)(2) begins with the language of the statute itself. Section 1322(b)(2) uses both terms "secured claims" and "secured interest" in two different, yet adjacent, places. By definition, "secured interests" are those created by an agreement between the parties; thus making them voluntary or consensual. 11 U.S.C. § 101(51). The term "secured claims" is not defined in the Bankruptcy Code, but "claims" is defined by itself as meaning the right to payment, whether secured or unsecured. 11 U.S.C. § 101(5)(A); *See Ron Pair, supra*, 489 U.S., at 238–39, 109 S.Ct. at 1028–29.

■ Secured claims are therefore claims that have been perfected in some fashion, either by virtue of a secured interest, a statute, or a judgment. Statutory claims are considered to be nonconsensual because they are created and fixed by operation of law. 11 U.S.C. § 101(53). The term "statutory lien" is defined in the Bankruptcy Code as a "lien arising solely by force of a statute . . . *but does not include security interest* or judicial lien . . ." *Id.*

■ The Claimants in this case possess claims, or rights to payment, which are secured against the Debtors' principal residence by virtue of statutory liens. Based on the language of § 1322(b)(2) and the definitions of "security interest," "claim" and "statutory lien," it is determined that for the purposes of § 1322(b)(2), the Claimants' secured claims can be modified by the Debtors' Chapter 13 plan because they do not possess security interests in the Debtors' real property. The Claimants possess liens that create secured claims against the property, not security interests, and such claims are not protected by § 1322(b)(2).

This statutory construction of 11 U.S.C. § 1322(b)(2) has judicial support: *In re Venable*, 48 B.R. 853, 856 (S.D.N.Y.1985); *In re Mitchell*, 39 B.R. 696, 700 (Bankr.D.Oregon 1984); *In re Seel*, 22 B.R. 692, 695–96 (Bankr.D.Ka.1982); *In re Crotty*, 11 B.R. 507, 510 (Bankr.N.D.Tx.1981). Therefore, for the reasons stated above, this court holds that the Claimants' secured claims are not protected from modification by 11 U.S.C. § 1322(b)(2).

**2.** *What Rate of Interest is Reasonable*

■ Although the Debtors may properly modify the Claimants' oversecured secured claims under 11 U.S.C. § 1322(b)(2), this does not mean that the Debtors may reduce the Claimants' right to postpetition interest down to 0%. Section 1322(b)(2) does not operate to the exclusion of the other sections within Chapter 13. The court must consider the application of 11 U.S.C. § 1325(a)(5)(B)(ii) to decide what interest rate is appropriate under these circumstances. Section 1325(a)(5)(B) states as follows:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim;

11 U.S.C. § 1325(a)(5)(B).

■ Therefore, pursuant to § 1325(a)(5)(B) a Chapter 13 plan may be confirmed over the objection of a secured creditor if certain conditions met. Specifically, a debtor may retain property in which a secured creditor has a security interest, even if the secured creditor would prefer to repossess and liquidate the property as it would be entitled to do outside of bankruptcy. In exchange for giving the debtor a right to continue possession of the property, § 1325(a)(5)(B) directs two things: i) that the

secured creditor retain a continuing lien on the property; and ii) that the secured creditor must be paid "the value, as of the effective date of the plan," which shall be "not less than the allowed amount of such claim." 11 U.S.C. §§ 1325(a)(5)(B).

· In the recent Supreme Court decision of *Rake v. Wade*, the Court addressed the issue of whether oversecured creditors were entitled to post confirmation interest. *Rake v. Wade, supra,* —— U.S. at ——, 113 S.Ct. at 2190. In an effort to reconcile §§ 506(b) and 1325(a)(5)(B)(ii), the Court stated in part:

> [T]hus, unless the creditor accepts the plan or the debtor surrenders the collateral to the creditor, 1325(a)(5)(B)(ii) guarantees that property distributed under a plan on account of a claim, including deferred cash payments and satisfaction of the claim ... must equal the present dollar value of such claim as of the confirmation date.

*Id.,* 113 S.Ct. at 2191.

The Supreme Court concluded that under 11 U.S.C. § 1325(a)(5)(B)(ii), an oversecured creditor is entitled to the "present value" of its post confirmation claim as an element of an allowed secured claim provided for by the plan. *Id.,* 113 S.Ct. at 2193. Unfortunately, neither the Bankruptcy Code nor the Supreme Court offer guidance as to *how* to determine present value.[4]

In *GMAC v. Jones,* 999 F.2d 63 (3d Cir. 1993), the Court of Appeals for the Third Circuit recently defined "present value" for the purposes of 11 U.S.C. § 1325(a)(5)(B). In *GMAC v. Jones,* GMAC objected to the interest rate provided for its claim under the debtor's Chapter 13 plan, contending that the proposed interest rate was too low to provide it with the present value of its allowed secured claim over the time of the plan, as required by 11 U.S.C. § 1325(a)(5)(B)(ii).

The Third Circuit considered two theories for determining present value and decided that the "coerced loan" theory was the most appropriate under the circumstances of a Chapter 13 cramdown.[5] Under the "coerced loan" theory, the Third Circuit held that the rate of interest under 11 U.S.C. § 1325(a)(5)(B)(ii) is "[t]hat which the secured creditor would charge, at the effective date of the plan, for a loan similar in character, amount, and duration to the credit which the creditor will be required to extend under the plan." *Id.* at 70. The court's definition of "a loan of similar character," was a "loan that the creditor regularly extends to other debtors who are not in bankruptcy but who are otherwise similarly situated to the debtor who is the recipient of the loan coerced by the chapter 13 proceeding and who are seeking the same kind of credit (e.g., auto loan, home equity loan, etc.)." *Id.* at 67, n. 4.

The Third Circuit reasoned that "[a]ny creditor extending credit anticipates that over the course of the loan it will recover, in interest, its cost of capital and its cost of service, as well as profit." *Id.; accord, Memphis Bank & Trust Co. v. Whitman,* 692 F.2d 427 (6th Cir.1982). The court also believed that the "coerced loan" theory was most appropriate because it is based upon the statutory objective of 11 U.S.C. § 1325(a)(5)(B)(ii), which is "to put the secured creditor in an economic position equivalent to the one it would have occupied had it received the allowed secured amount immediately...." *Id.* at 65.

Finally, in *GMAC v. Jones,* the Third Circuit considered other elements of a "coerced loan" such as profit and risk. The court

---

4. Other courts have defined "present value" for the purposes of 11 U.S.C. § 1129: *In re Camino Real Landscape Maint. Contractors,* 818 F.2d 1503, 1505 (9th Cir.1987); *In re Welco Industries, Inc.,* 60 B.R. 880, 882 (9th Cir. BAP 1986); *In re General Development Corp.,* 135 B.R. 1008, 1011–12 (Bankr.S.D.Fla.1991); *In re Busone,* 71 B.R. 201, 204 (Bankr.E.D.N.Y.1987); *In re Roxbury Residential Assoc., Inc.,* 35 B.R. 348, 349 (Bankr.D.Conn.1983); *In re Connecticut Aerosols, Inc.,* 31 B.R. 883, 886 (Bankr.D.Conn. 1983). *See also* 5 *Collier on Bankruptcy,* ¶ 1129.03 at 1129–98 to 1129–103.

5. Other appellate courts have also considered and applied the "coerced loan" theory to create an interest rate equal to "similar loans": *United Carolina Bank v. Hall,* 993 F.2d 1126 (4th Cir. 1993); *In re Hardzog,* 901 F.2d 858 (10th Cir. 1990); *United States v. Arnold,* 878 F.2d 925 (6th Cir.1989); *United States v. Neal Pharmacal Co.,* 789 F.2d 1283 (8th Cir.1986); *Matter of Southern States Motor Inns, Inc.,* 709 F.2d 647 (11th Cir. 1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

concluded that although a "coerced loan" may result in an interest rate that includes an element of profit, "it would be inappropriate to attempt to exclude consideration of 'profit' from a determination of the § 1325 interest rate." *Id.* at 69. In addition, the court considered the practice of gauging a lending rate based upon a debtor's credit history and whether an "equity cushion" may exist in the collateral when determining present value. The court suggested that the bankruptcy process itself counter-balanced these factors so as to create the best approximation for courts to rely upon. *Id.* at 68–69. The court explained as follows:

> Nevertheless, we are persuaded that the elements that would tend to make "coerced loans" more costly to the secured creditor than new loans, and the elements that would tend to make "coerced loans" less costly to the secured creditor than new loans will generally balance out and that it would be difficult or impossible to empirically demonstrate and quantify the cost differential between new and coerced loans.

In the instant case, the statutory interest rates of 12% charged by Allegheny County and 10% charged by Penn Hills, are rates that were authorized by the Pennsylvania legislature in the late 1970's and early 1980's, a different economic period regarding interest rates than exists today.[6] At the time these higher interest rates were permitted by the legislature, the market rates for commercial interest had risen to record levels.

As a result of these high rates, tax collections became impaired because some taxpayers paid other creditors and allowed their tax bills to accumulate at the lower 6% statutory rate. In the early 1980's, a 6% interest rate was a very favorable rate to a taxpayer. Therefore, the 1981–82 amendments made by the Pennsylvania legislature were designed coerce and encourage prompt payment of taxes in competition with other higher commercial rates. However, in the last 10 years commercial market interest

rates have declined to a historical low. Consequently, these maximum statutory interest rates of 12% and 10% are in the nature of a penalty.

This court must decide what *reasonable* interest rate would a secured creditor charge, as of the effective date of the plan, for a loan similar in character, amount, and duration. The hypothetical "creditor" contemplated by the Third Circuit's test in *GMAC v. Jones* was not a lien creditor, but rather a bank or other similar type of financial institution. Municipalities and counties such as the Claimants are not in the business of lending money, therefore, the "coerced loan" theory does not fit neatly. However, this court believes that the "coerced loan" theory can apply to the Claimants if the interest rate reflects the reasonable cost of interest to the municipality and the county, as of the effective date of the plan, over a 60 month period.

The market rate of interest for a municipal creditor varies from the rate charged by a consumer or commercial lender because municipal interest is free of federal tax to the owner. Bond rating agencies such as Moody's Investment Service and Standard & Poor's, Inc. rate municipalities; rates which vary depending on the credit worthiness, the administration and revenue of municipality. Daily trade publications such as the *Bond Buyer* publish the historical interest rates for municipal bonds.

This court believes that such interest rates best reflect a "loan similar in character" under these circumstances. The Debtors may apply such appropriate interest rates, as published in the *Bond Buyer* or a like publication, for debt with a 5 year term or longer for a "AA" rated county (for Allegheny County) and an "A" rated municipality (for Penn Hills). In this case, the *Bond Buyer* index reported that the interest rate as of November 17, 1993 was 4.05% for a "AA" rated county and 4.30% for an "A" rated municipality. Thus, the court deter-

---

**6.** Allegheny County's legislative history (72 P.S. § 5645): P.L.372, No. 106, May 5, 1982, amending the act of May 31, 1933 (P.L.1135, No. 280); and municipal tax collection legislative history

(53 P.S. § 7143): P.L.319, No. 113, Oct. 29, 1981, amending the act of May 16, 1923 (P.L. 207, No. 153).

mines that 4.05% and 4.30%, respectively, are the "present value" of the Claimants' secured claims for the purposes of 11 U.S.C. § 1325(a)(5)(B)(ii). Therefore, 4.05% is the lowest interest rate the Debtors can propose to pay Allegheny County postpetition and 4.30% is the lowest interest rate the Debtors can propose to pay Penn Hills and the School District postpetition. The court takes judicial notice of these interest rates.

The Debtors have proposed a Chapter 13 plan that will pay the Claimants 7% interest on their respective postpetition claims. The Debtors asserted in court and in their briefs that this rate of interest is reasonable. Because 7% is more than 4.05% and 4.30%, the court finds in favor of the Debtors.

An appropriate Order is attached.

### ORDER OF COURT

AND NOW, this 13 day of May, 1994, IT IS HEREBY ORDERED, ADJUDGED and DECREED that for the reasons stated in the Memorandum Opinion dated the same, the debtors Samuel and Alice DeSarno, shall pay Allegheny County prepetition interest in the amount of 12% on its secured claim. 72 Pa.S.A. § 5648. It is further,

ORDERED that the Debtors shall pay the Municipality of Penn Hills and the School District of Penn Hills prepetition interest in the amount of 10% on its secured claim. 53 Pa.S.A. § 7143. It is further,

ORDERED that pursuant to 11 U.S.C. § 1322(b)(2), the Debtors may properly modify the postpetition claims of Allegheny County, the Municipality of Penn Hill and the School District of Penn Hills (collectively "Claimants"). It is further,

ORDERED that in accordance with 11 U.S.C. § 1325(a)(5)(B)(ii), the Debtors may pay the Claimants postpetition interest in the amount of 7% as proposed in their Chapter 13 plan.

At Pittsburgh, Pennsylvania.