**In re Richard Lee SHORTEN and Helen Marie Shorten, Debtors.**

**Bankruptcy No. 83–00840–SW–S–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

April 12, 1985.

James R. Doran, Springfield, Mo., for debtors.

Gary Powell, Springfield, Mo., for Federal Land Bank.

David DeTar Newbert, Asst. U.S. Atty., Kansas City, Mo., for Farmers Home Admin.

James DeNeen, Joplin, Mo., for Farmers Bank of Walker.

Pat Sweeney, Springfield, Mo., for Corda Gee.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Richard and Helen Shorten, debtors herein, filed a Chapter 11 petition in March of 1983 to reorganize their hog farm operation. A second amended plan and disclosure statement has been distributed and voted upon by creditors. One secured class, GMAC, voted to accept the amended plan. Four other secured classes, Federal Land Bank of St. Louis (Land Bank), Farmers Home Administration (FmHA), Mrs. Corda Gee and Farmers Bank of Walker, Missouri voted to reject the plan and filed objections to its confirmation. The class of unsecured creditors also rejected the plan. Although debtors request confirmation pursuant to § 1129(b) of the Code several of the rejecting secured creditors contend the plan is not feasible.

An evidentiary hearing was held on November 16, 1984. Debtors appeared in person and by counsel. Land Bank, FmHA, Mrs. Gee and Farmers Bank appeared by counsel and representatives. Evidence was heard and the matter taken under advisement. Briefs have been filed by each party.

Upon debtors' timely request for confirmation under § 1129(b), confirmation under this section over creditors' rejection of the plan is permitted "if all of the applicable requirements of subsection [1129](a) ... other than paragraph (8) are met ...". Section 1129(b)(1). Section 1129(a)(11) requires the Court to find that "[c]onfirmation ... is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor ... unless such liquidation or reorganization is proposed in the plan." No such liquidation or reorganization is proposed here. "In determining whether the [p]lan ... is feasible, the bankruptcy court has an obligation to scrutinize the [p]lan carefully to determine whether it offers a reasonable prospect of success and is workable". *United Properties, Inc. v. Emporium Department Stores, Inc.*, 379 F.2d 55, 56 (8th Cir.1967); see also, *In re Monnier Brothers*, 755 F.2d 1336, 1341 (8th Cir.1985).

The evidence shows debtors' farm is comprised of three separate tracts of land respectively consisting of 320, 240 and 160 acres. Debtors presently have 189 head of hogs and 5 head of cattle on the farm. There is also a substantial amount of equipment and machinery. Land Bank holds a first mortgage on the 320 and 240 acre tracts and FmHA a second on these same properties. Mrs. Gee holds a first mortgage on the 160 acres. Farmers Bank has a perfected security interest in all of the debtors' farm products and farm machinery. The debt to Land Bank is $280,000, to FmHA, $217,000, to Mrs. Gee, $84,000 and $111,000 to Farmers Bank. Debtors have made no payments to any of these creditors since prior to filing their Chapter 11 petition.

Under the plan debtors propose to surrender the 240 acre tract to Land Bank and take a corresponding credit against that obligation. Land Bank is to retain its lien on the 320 acre tract to secure the balance of its claim. A portion of FmHA's claim is to also be secured by a lien on this tract with the balance of the claim being treated as unsecured. The secured claims of Land

Bank and FmHA are to then be amortized over thirty (30) years at 12% interest. Debtors value the 240 acre tract at $550 per acre and the 320 acre tract at $700 per acre.

■ There is nothing inherently unsound with debtors' proposal to surrender property for credit on an outstanding obligation, provided the property represents the indubitable equivalent of the sought after credit. See *In re Fursman Ranch*, 38 B.R. 907 (Bkrtcy.WD Mo.1984). In the case at bar Land Bank objects to debtors' valuation of the 240 acre tract and contends this tract is worth only $100,000. The Court has previously valued both the 240 and the 320 acre tracts during these proceedings in connection with a Motion to Lift the Stay by Land Bank. In its Order dated May 27, 1984, the Court denied Land Bank relief from the stay and respectively valued the tracts of land at $550 and $750 per acre. There is no evidence to show a decline in the value of either piece of property since the Court's earlier valuation. While the Court is not bound by its prior valuations made in a different context, see § 506(a), the Court is not persuaded that the prior valuations are now inapplicable. For the purposes of confirmation therefore, the Court finds the 240 acre tract is still worth $132,000 and the 320 acre tract $240,000.

A dispute also exists as to the valuation of the machinery and livestock securing the claim of Farmers Bank. Debtor, Mr. Shorten, testified the collateral presently has a value of approximately $70,000. Mr. Giessel, the President of Farmers Bank, valued debtors' hogs at $12,000 and the farm machinery at $84,000 based on an appraisal made for the bank in April of 1984 and a recent follow-up inspection of the collateral. The Court finds the chattels to have a value of $80,000. This figure, however, is not critical to the Court's analysis of the plan's feasibility because of the manner in which debtors propose to pay the claim. The plan states "[p]ayment will be made with interest at 12% per annum. The first payment will be made each year by September 15, in the amount of $10,000.00.

The first payment will be made September 15, 1985, in the amount of $10,000.00. Successive payments will be made each year by September 15 in the amount of $10,000". Based on annual principal and interest payments of $10,000, it will take approximately 25 years to amortize $80,000.00.

As to Mrs. Gee the plan proposed annual principal payments of $1,500 per year with interest at 9½% for ten (10) years with a balloon payment to cover the balance at the end of that period. If payments are not timely commenced the plan contemplates the 160 acre tract to be surrendered to Mrs. Gee in satisfaction of the debt owed to her.

Based on the foregoing valuations of the 240 and 320 acre tracts, the proposed $10,000 level annual payments to Farmers Bank, treatment of Mrs. Gee's debt as satisfied by the surrender of the 160 acre tract and, assuming debtors' plan could be confirmed over creditors' objections, the following figures represent the annual payments necessary to service the remaining debt under the plan for the first two years if confirmation occurred:

|  | | 1985 | 1986 |
|---|---|---|---|
| FLB | ($140,000 at 12% over 30 yrs.) | $18,268.32 | $18,268.32 |
| FmHA | ($ 92,000 at 12% over 30 yrs.) | 11,356.08 | 11,356.08 |
| Farmers Bank | (per plan) | 10,000.00 | 10,000.00 |
| ASCS | (per plan) | 1,000.00 | 1,000.00 |
| Allis Chalmers | (per plan) | 1,000.00 | 1,000.00 |
| GMAC | (per plan) | 1,800.00 | 600.00 |
| Unsecured Creditors Funds | (per plan) | 2,400.00 | 6,000.00 |
| | Total | $45,824.40 | $48,224.40 |

Exhibit "G" of the plan and disclosure statement contains debtors' income and expense projections for 1985 and 1986. According to these figures, after debt service payments and other expenses debtors project *net* incomes of $30,044 in 1985 and $19,944 in 1986. Debtors believe such results can be achieved if the Court permits $1,000 of hogs to be sold and the proceeds reinvested in beef cattle which would be used to establish a standing herd of cattle. Debtors also intend to supply much of the necessary labor and transportation on the farm and use some of the farm crops for feed to reduce operating expenses.

It is unclear exactly how much land is available to grow crops. Debtor testified

115 acres were available to crop on the 320 acres but 50 more could be added to this tract if some land were cleared. Debtor also testified 60 acres are available for crops on the 160 acres. Debtor explained that 70 acres will be used for wheat production and farm programs and 50 acres used to grow milo. It was never explained how this proposed acreage was split between the 320 acre tract and the 160 acre tract, although debtor did testify his production figures would not be altered if the 160 acre tract were surrendered back to Mrs. Gee. It is also anticipated that the newly acquired cattle would be pasture fed on debtors' farm.

The Court is not persuaded by debtors' projections or proposed entry into the cattle business. It appears from the projections that a portion of the crops proposed to be sold have also been allocated for feed to reduce that expense. Both objectives cannot be accomplished with the same crops. The projections also fail to make any provision for taxes, insurance or any unexpected repairs, transportation, or labor costs which debtors' monthly operating reports show to have been incurred throughout debtors' Chapter 11 case. While the foregoing omissions could amount to nominal expenditures, the Court's real concern is with debtors' income projections. Debtors' amended disclosure statement contains a summary of debtors' farm income and expenses on a monthly basis from April 1983 to July 1984. Based on these figures debtors averaged approximately $283.44 in *net* income attributable to the farm over the 16 month period. Review of debtors' personal monthly reports which reflect non-farm related income and expenses show debtors' average net income per month was $5.08 over the same period of time. Subsequent monthly reports to date are no more encouraging in regard to either the farm or personal income and expense situations. All of the reports on file indicate that the only creditor under the plan to receive any payments during the course of debtors' Chapter 11 case has been GMAC on its truck loan. The Court is not persuaded that debtors'

income projections are realistic in light of the actual income realized the last two years. Furthermore, there is no evidence to demonstrate any likelihood of success with regard to the proposed cattle endeavor. The Court also notes that weather and health problems have plagued debtors' hog herd for the past several years. Unsubstantiated optimism will not cure such problems which could easily reappear.

"A Debtor must be given a reasonable opportunity to demonstrate his ability to reorganize ... [b]ut after that reasonable opportunity has been given, and the evidence shows that rehabilitation is not feasible, the case should be converted or dismissed". *In re Clemmons*, 37 B.R. 712, 717 (Bkrtcy.WD Mo.1984). This case has been pending 24 months. There is no evidence of an ability to reorganize. Because debtors are farmers the Court cannot order conversion. Section 1112(c). However, the Court will order dismissal if debtors do not convert. The Court finds there is no reasonable likelihood of rehabilitation in this case.

Debtors are granted to May 10, 1985 to convert this case or to suffer dismissal.