**In re FRENCH QUARTERS EAST, L.P., Debtor.**

**Bankruptcy No. 91–42964–1–11.**

United States Bankruptcy Court, W.D. Missouri.

Dec. 21, 1992.

Kenneth C. Jones, Watson, Ess, Marshall & Enggas, Kansas City, MO, for RTC/Receiver.

Bruce J. Clark, Davis, Wright, Unrein, Hummer & McCallister, Topeka, KS, for debtor.

**ORDER DENYING DEBTOR'S MOTION TO ALTER OR AMEND, AND RECONSIDER ORDER DENYING CONFIRMATION, OR IN THE ALTERNATIVE FOR A CONTINUANCE TO ALLOW MODIFICATIONS TO THE PLAN**

KAREN M. SEE, Bankruptcy Judge.

## I.  INTRODUCTION

This is a single-asset, limited partnership Chapter 11 case involving an apartment building.  There are no significant trade creditors.  Other than insider creditors and limited partners, the only significant creditor is the RTC.  For purposes of the confirmation proceedings only, the RTC claim was stipulated to be exactly fully secured in the amount of $1,518,000, but RTC contends the amount of the claim is actually $1,600,402.04.  Facts of the case are set forth in the record of the confirmation hearing and the order denying confirmation, and will not be fully repeated in this order denying debtor's motion to alter or amend, to reconsider, or to permit filing of a new plan.

The case was filed 15 months ago, on September 11, 1991.  Four extensions were granted for debtor to file a plan and disclosure statement, and on November 16, 1992, a confirmation hearing was held on an amended plan filed on October 22, 1992.  Confirmation was denied and it was ordered, at the conclusion of the hearing and in a written order denying confirmation, entered November 20, 1992, that the case would be dismissed unless within 10 days debtor moved to convert or showed good cause why the case should not be dismissed.

On November 30, 1992, debtor filed a motion to alter or amend and reconsider the order denying confirmation, or in the alternative, to permit debtor to file a new plan and again seek confirmation.  RTC's reply to debtor's motion strenuously objected to reconsideration of the order denying confirmation or to allowing the debtor to propose another plan.

Debtor's arguments are without merit and are repetitions of information presented at the confirmation hearing.  Debtor's motion to alter or amend, to reconsider order denying confirmation, or to grant a continuance to allow further plan modification or the filing of a new plan is denied.  Debtor's motion and the RTC's reply cover many points on the grounds for reconsideration.  Some of the major issues are addressed herein.

## II.  RECONSIDERATION AND FEASIBILITY ISSUES

■ Debtor's assertion that it has the ability to cash flow a plan is without merit.  Debtor's amended plan proposed a variable interest rate, estimated to start at seven percent on the confirmation date, which debtor offered to change to a fixed rate at the hearing.  The debt at seven percent would be amortized on a 35 year schedule with a 10 year balloon.  The seven percent rate is below-market and the 35 year amortization on a 10 year balloon would effectively depress the rate further.  The interest rate and amortization schedule was rejected by the court under authority such as *United States v. Doud,* 869 F.2d 1144 (8th Cir.1989), which requires a market rate, and *United States v. Neal Pharmacal Co.,* 789 F.2d 1283, 1286 (8th Cir.1986), which holds a variable rate is disfavored because it presents problems in establishing feasibility.

Even at an unacceptably low rate of seven percent with a 35 year amortization, payments to the RTC would be in excess of $10,000 per month.  However, such a payment far exceeds debtor's demonstrated ability to pay, as indicated by monthly operating reports filed in the bankruptcy case, which show that in the extensive time debtor has been operating under the protection of the Bankruptcy Code and paying only certain current obligations, the most debtor was able to pay RTC was an average of $6,300 per month, or more than $3,700 less than would be necessary to support pay-

ments to the RTC under a seven percent interest rate, which was rejected as too low at the confirmation hearing.

It is not necessary to address additional questions about the appropriate interest rate for this plan, because the evidence showed debtor cannot make payments even at seven percent. The assertion in Debtor's motion to reconsider that it could cash flow an interest rate up to eight and one-half percent is contrary to the evidence and operating history. Debtor did not present any facts which would demonstrate that after confirmation, debtor would have greater cash flow and be able to pay more. Unfounded conjectures that circumstances will somehow be better after confirmation do not rise to the level of evidence necessary to demonstrate ability to perform under the proposed plan. Debtor's original plan, which provided an even lower rate, is probably a more accurate indicator of debtor's assessment of the amount debtor might be able to pay the RTC.

At the confirmation hearing, alleged low income tax credits to be obtained in 1993 were described in surprise testimony as a crucial part of the plan, yet the credits were described only in vague terms, and they had not been discussed in the plan or disclosure statement. There was no proof of the existence of any such credits which would benefit debtor, and no plausible explanation was given as to why this crucial plan provision had not been timely disclosed to creditors in the plan or disclosure statement (especially in light of the fact that those documents were amended in October, shortly before the confirmation hearing on November 16). This proposed addition to the plan was a major amendment, not a minor "clean-up" adjustment. It would not be fair or equitable to confirm the plan over the RTC's objection and ballot, when the disclosure statement and plan did not disclose this alleged crucial provision so creditors could evaluate it before the hearing and before casting ballots and filing objections. The effect of the surprise testimony was that the credits were being offered as a last-minute miracle cure for the insurmountable problems with feasibility of the proposed plan.

Debtor's motion to reconsider states debtor "has good reason to believe" that limited partners may now be willing to contribute $75,000 toward the reorganization effort. This belated suggestion is not a concrete offer of limited partner contributions. There is no proof of ability or willingness to make such contribution, and no demonstration that any such contribution, if made, would make the plan feasible. The possibility of such contributions is too little too late. If the limited partners had been genuinely committed to proposing a reasonable plan, they would have made a concrete proposal in the plan and disclosure statement, rather than waiting until after confirmation was denied and the court had determined that the secured creditor should not have to shoulder the cost and risk of the reorganization for the benefit of the limited partners.

The amended plan, and any possible modifications or future plans as outlined in debtor's motion to reconsider, would require the RTC to shoulder the expense of reorganization through: a restructured payment plan with an unreasonably low interest rate, which is effectively reduced further by a 35 year amortization schedule on a 10 year balloon; and diversion of several months of RTC payments to pay property taxes. Other than the RTC, the only significant parties in this case are limited partners and other insiders. The only parties who stand to benefit from the reorganization process are the limited partners, who hope to avoid the adverse tax consequences which would result from foreclosure on the property, and who hope to perhaps recoup a portion of their investment. As noted at the confirmation hearing, it is not appropriate to require an outside creditor to, in effect, bear the cost and risk of reorganization for the sole benefit of the insider limited partners.

### III.   REQUEST FOR ADDITIONAL TIME TO FILE MODIFIED OR NEW PLAN

█ This bankruptcy case was filed 15 months ago, on September 11, 1991. Debt-

or was granted four extensions to file a plan, and there were also continuances of the confirmation hearing date. The extensive time provided to debtor prior to confirmation weighs against an extension of time for a second round of plan and disclosure documents, and a second round of confirmation proceedings. Debtor has had more than an adequate time to propose a feasible plan, and the evidence at the confirmation hearing indicates that a feasible plan is not possible.

Debtor has not demonstrated any new or changed circumstance or any potential plan provisions which were not proposed or could not have been proposed the first time around in the amended plan. To be sure, it would be difficult for debtor to present a credible argument that a significant and positive change of circumstances—an eleventh-hour miracle—would occur in the 14 days between the hearing and the post-hearing motion.

Debtor asserts the "owner of a business should be allowed the full possibility of bankruptcy reorganization." Debtor has been provided that full possibility. The concept of affording a "full possibility" of reorganization does not mean an unending right to remain in Chapter 11 in order to hold creditors at bay without the ability to propose a feasible plan within a reasonable time.

All issues raised in debtor's motion were raised or could have been raised in the amended plan and disclosure statement or at the confirmation hearing. There has been no showing that any new plan or modification debtor could propose would result in a feasible plan. Debtor offered every provision it had available in an effort to make the plan feasible in the first round of confirmation proceedings, but the evidence did not demonstrate feasibility, so to offer even more stringent terms now, such as a higher interest rate which would require even greater cash flow, would be futile. "A debtor must be given a reasonable opportunity to demonstrate his ability to reorganize ... [b]ut after that reasonable opportunity has been given, and the evidence shows that rehabilitation is not feasible, the case should be converted or dismissed." *In re Shorten*, 49 B.R. 722, 725 (Bankr.W.D.Mo.1985); *In re Clemmons*, 37 B.R. 712, 717 (Bankr.W.D.Mo. 1984).

There is no merit to debtor's suggestion that it has been "somewhat misled by the RTC twice," pre-petition when the RTC declared the debt in default, and post-petition when the RTC considered but did not accept debtor's settlement proposal. In regard to the first charge, at the confirmation hearing there was no finding of pre-petition bad faith by the RTC, and no finding of a pre-petition agreement to manufacture a two-month default, as asserted by debtor.

In regard to the second charge, debtor requested four extensions of time to file a plan, and there were also continuances of the confirmation hearing date. It appears that the RTC either agreed or did not object. From cursory review of the file, it appears, consistent with the undersigned judge's general recollection, that the judge was the primary person who inquired about the time, and set a hearing on the last motion for extension to file plan. In light of discussions with the parties, such as when the hearing date was continued, the court has been generally aware that the parties engaged in pre-confirmation negotiations, as do most debtors and creditors in Chapter 11 cases. As in other cases, the parties hoped for a mutually agreeable resolution of disputes, and the court believes that both sides acted in a sincere effort to settle disputes. However, the opposing party is not required to settle, and in this case it seems that castigating the opponent for failing to settle on debtor's terms indicates only a case of sour grapes. There is no substance to debtor's complaint that the case was "held up" while the RTC considered debtor's proposal. There is no assertion of prejudice from any alleged delay, and the alternative would have been for the RTC to refuse to consent to an extension to consider debtor's proposal, which the debtor would have charged was equally reprehensible.

The court rejects debtor's allegation that any delay in proceedings was the RTC's fault. It is not necessary in this case to attribute fault to any party in regard to the length of time in pre-confirmation status. Debtors generally want as much time as possible to operate under bankruptcy protection without having to propose a plan, and before having to face the ultimate question of whether there is a feasible plan. In fact, debtor's amended disclosure statement filed October 22, 1992 (page 6), states: "All parties benefited from the extensions by having a Plan that had a lower chance of being objected to." Even though debtor did not succeed in obtaining the RTC's agreement, debtor was the primary beneficiary of any alleged delay in reaching the confirmation hearing, because debtor was able to use that time to attempt to enhance its cash flow and present a better picture of operations.

Moreover, without the unusually large number of extensions, debtor would have been less prepared to file a plan, and the denial of confirmation and resulting adverse impact on limited partners would have occurred earlier. Pursuant to Bankruptcy Local Rule 3.016, unless extended or otherwise ordered, the plan and disclosure statement are due 120 days after the case is filed. If debtor had not received the benefit of four extensions, the plan would have been due on January 11, 1992, and the confirmation hearing ordinarily would have been set in March, 1992, eight months before the confirmation hearing finally occurred. It is difficult to understand how debtor can complain that the RTC delayed debtor, where debtor stated in the amended disclosure statement and plan that the additional time was beneficial, where debtor enjoyed two thirds of a year of additional bankruptcy protection in order to regroup and investigate every reasonable plan possibility for this single asset case, and where the creditor's attitude was benign in tolerating or consenting to the extensions of the plan deadline.

## IV. CONCLUSION

Accordingly, for reasons stated above and in the RTC's reply to debtor's motion, and for lack of good cause shown, it is hereby

ORDERED that debtor's motion to alter or amend, to reconsider order denying confirmation, or to permit filing of a new plan is denied, and this Chapter 11 case is hereby dismissed.