LAY, Chief Judge.
 

 The issue in this appeal is what rate of interest on deferred payments of delinquent federal taxes will provide the United States with the present value of its claim as required under 11 U.S.C. § 1129(a)(9)(C) (1982) for confirmation of the debtor’s reorganization plan.
 
 [1]
 

 Background
 

 Neal Pharmacal Company (the debtor) filed for reorganization under Chapter 11 of the Bankruptcy Code on February 2, 1983. On May 11, 1983, the Internal Revenue Service (the government or the IRS) filed a proof of claim in the bankruptcy proceedings for unpaid withholding and social security taxes plus interest and other additions, totalling $45,574.13. Of this claim, $31,465.39 was secured by liens against the debtor’s property.
 
 [2]
 
 Under the
 
 *1285
 
 debtor’s proposed reorganization plan, the government was to receive deferred cash payments over a five year period of a value, as of the effective date of the plan, equal to the amount of its tax claim plus quarterly interest payments on the unpaid balance at the rate paid on thirteen-week treasury bills at the time of each quarterly payment.
 

 The government objected to the debtor’s plan, contending that the interest rate proposed by the debtor would not provide the government with cash payments equal to the value of its claim as of the effective date of the plan as required by 11 U.S.C. § 1129(a)(9)(C).
 
 [3]
 
 Instead, the government argued, it was entitled to the rate established by 26 U.S.C. § 6621 (1982) for payment on delinquent tax claims under 26 U.S.C. § 6601 (1982). The section 6621 rate is based on a six-month average of the prime rate quoted by commercial banks to large businesses. 26 U.S.C. § 6621(c). After a hearing, the bankruptcy court rejected the government’s objection and, on March 15, 1984, filed an order modifying and confirming the debtor’s plan.
 
 [4]
 
 The government sought review of the bankruptcy court’s order in district court, contending that the bankruptcy court erred in determining the proper interest rate to be applied to deferred tax payments under section 1129(a)(9)(C). The district court
 
 [5]
 
 affirmed the bankruptcy court’s confirmation order on the ground that the bankruptcy court’s determination of the proper discount rate was not clearly erroneous, 46 B.R. 721. This appeal followed.
 

 Discussion
 

 Section 1129(a)(9)(C) provides that a debt- or seeking confirmation of a reorganization plan under Chapter 11 may only defer the payment of priority tax claims if the creditor who is forced to accept the deferred payments receives interest on its claim in an amount that renders the deferred payments equivalent to the present value of its claim.
 
 [6]
 

 In re Southern States Motor Inns, Inc.,
 
 709 F.2d 647, 650 (11th Cir.1983), ce
 
 rt. denied,
 
 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Although this court has not yet considered what interest rate will provide a creditor with the present value of its claim within the meaning of section 1129(a)(9)(C), we have discussed the method for determining what interest rate on deferred payments would provide a creditor with the present value of its claim within the meaning of 11 U.S.C. § 1129(b) (2)(A)(i)(II) (1982). In construing language virtually identical to the language of section 1129(a)(9)(C), this court stated:
 

 The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and the risk of subsequent default.
 

 In re Monnier Bros.,
 
 755 F.2d 1336, 1339 (8th Cir.1985) (quoting 5 Collier on Bankruptcy 111129, at 1129-65). Courts considering this issue under section 1129(a)(9)(C) have uniformly adopted the market rate
 
 *1286
 
 approach discussed in
 
 Monnier Bros.,
 
 although the decisions vary as to what interest rate best approximates the “prevailing market rate” for a loan of comparable risk and term.
 
 See, e.g., Southern States,
 
 709 F.2d 647 (§ 6621 rate applied because although evidence established that market rate was higher than § 6621 rate, government did not request higher rate);
 
 In re Connecticut Aerosols,
 
 42 B.R. 706 (D.Conn.1984) (rate established by 28 U.S.C. § 1961(a) for interest on judgments in federal court best estimate of market rate);
 
 In re Fi-Hi Pizza, Inc.,
 
 40 B.R. 258 (Bankr.D.Mass.1984) (§ 6621 rate plus 2.5 percentage points for risk component best approximation of prevailing market rate);
 
 In re Bay Area Services,
 
 26 B.R. 811 (Bankr.M.D.Fla.1982) (current prevailing prime rate plus ten percent adjustment for inflation best estimate of prevailing market rate).
 

 We must agree with the government that
 
 Monnier Bros,
 
 requires rejection of the rate proposed by the debtor and approved by the bankruptcy court. Relying on its earlier opinion in
 
 In re Mart Corp.,
 
 No. 82-00622(1) (Bankr.E.D.Mo. filed June 21, 1983), the bankruptcy court concluded that only the creditor’s borrowing cost should be considered in determining the proper interest rate under section 1129(a)(9)(C). The bankruptcy court therefore adopted as the most accurate estimate of the government’s borrowing cost the debtor’s proposal that the government receive interest on its deferred payments at the current rate paid on thirteen week treasury bills at the time of each quarterly payment. The bankruptcy court’s sole reliance on the government’s cost of borrowing without consideration of the risk of nonpayment, the length of the payment period, and the existence of collateral is clearly contrary to the prevailing market rate approach referred to in
 
 Monnier Bros.
 
 and adopted by other courts that have considered the issue under section 1129(a)(9)(C).
 
 [7]
 

 We also reject the bankruptcy court’s finding that a floating rate of interest would better accommodate flucuations in interest rates in general, and would thus better provide the government with the present value of its claim. That section 1129(a)(9)(C) contemplates the use of a fixed interest rate is evident in its requirement that present value be determined “as of the effective date of the plan.” 11 U.S.C. § 1129(a)(9)(C). Moreover, the use of a floating interest rate would be administratively difficult and would complicate a determination of the feasibility of the debt- or’s reorganization plan, a prerequisite for confirmation.
 
 Cf. In re Fisher,
 
 29 B.R. 542, 551-52 (Bankr.D.Kan.1983) (rejecting floating rate in present value analysis under similar language in Chapter 13). We therefore hold that the bankruptcy court erred in finding that the government would receive the present value of its claim if paid interest on the deferred payments at the rate paid on thirteen week treasury bills at the time of each quarterly payment.
 
 [8]
 

 Having found that the bankruptcy court erred in its determination of the proper interest rate, we now address the more difficult issue: what rate best approximates the prevailing market rate in the case of deferred payments of a federal tax priority claim. This inquiry is complicated by the fact that there is no “market” for the type of involuntary loan involved in the case of deferred payments of federal taxes because the IRS is not in the business of lending money. The government urges us to adopt the rate established by 26 U.S.C. § 6621,
 
 [9]
 
 the rate the government charges
 
 *1287
 
 taxpayers on delinquent tax liabilities, as the minimum interest rate in all cases involving deferred payments of federal tax claims. The government argues that since it is entitled to receive interest from delinquent taxpayers at the section 6621 rate, that is the rate at which the government would make a loan to a third party and thus is the prevailing market rate for a similar loan. Unless it receives at least the section 6621 rate, the government argues, it will not be afforded the present value of its claim as required by section 1129(a)(9)(C). Although we agree that the section 6621 rate may be a relevant factor in determining the proper interest rate under section 1129(a)(9)(C), we reject the government’s contention that the section 6621 rate should be the exclusive measure of the rate that will provide the government with the present value of its claim.
 

 As the government notes in its brief, the interest rate paid by taxpayers on delinquent tax claims is designed to eliminate the incentive for taxpayers to “borrow” from the IRS by delaying the payment of their taxes.
 
 [10]
 

 See
 
 S.Rep. No. 494, 97th Cong., 2nd Sess. 306,
 
 reprinted in
 
 1982 U.S.Code Cong. & Ad.News 781, 1047-48; S.Rep. No. 1357, 93d Cong., 2d Sess.,
 
 reprinted in
 
 1974 U.S.Code Cong. & Ad.News 7478, 7495-96. In other words, by charging taxpayers interest on delinquent tax liabilities at the prevailing market rate for a similar loan, taxpayers will presumably not benefit by delaying the payment of their taxes. Therefore, because the section 6621 rate is an attempt to approximate the prevailing market rate for a similar loan, it is clearly relevant to a determination of the proper interest rate on deferred payments of a tax claim.
 

 Because of the method by which the section 6621 rate is determined (based on six month average of the prime rate, adjusted semi-annually), however, it may often lag behind the actual prevailing market rate. Several courts that have rejected the section 6621 as the prevailing market rate on deferred payment of taxes, including the bankruptcy court in this case, have noted this lag as one reason for their decision.
 
 See Southern States,
 
 709 F.2d at 651-52;
 
 Connecticut Aerosols,
 
 42 B.R. at 710;
 
 Bay Area Services,
 
 26 B.R. at 814;
 
 In Re Moore,
 
 25 B.R. 131, 134 (Bankr.N.D.Tex.1982). The 1982 amendments to section 6621 do reduce the potential for variance between the section 6621 rate and the prevailing market rate because the section 6621 rate is now calculated on a semi-annual rather than an annual basis and now reflects a six month average of the prime rate rather than the prime rate for one specific month.
 
 See Fi-Hi Pizza,
 
 40 B.R. at 271;
 
 Moore,
 
 25 B.R. at 134 (dicta). Even with these amendments, however, the section 6621 rate in effect on the date of a confirmation hearing will have been established from three and one-half to nine and one-half months earlier.
 
 See Southern
 
 
 *1288
 

 States,
 
 709 F.2d at 652. Thus, before relying on the section 6621 rate, courts must consider the extent to which current interest rates in general at the time of confirmation have significantly changed since the section 6621 rate was last determined.
 

 Several courts have also criticized the use of the section 6621 rate in bankruptcy cases because it ignores variations between the length of the payment period, the quality of the security, if any,
 
 [11]
 
 and the risk of default.
 
 See Southern States,
 
 709 F.2d at 652;
 
 Connecticut Aerosols,
 
 42 B.R. at 710;
 
 see also Fi-Hi Pizza,
 
 40 B.R. at 271-72 (adding 2.5 percentage points to section 6621 rate to compensate for risk of default). Variations in these factors may be relatively slight in the case of tax priority claims under section 1129(a)(9)(C) because that section deals with only unsecured loans that must be paid within a six year period. Nevertheless, the potential variations are not so insignificant that a single interest rate would be appropriate in all cases.
 
 Southern States,
 
 709 F.2d at 652 n. 6. Moreover, although some courts have suggested that the risk of nonpayment is minimal in the case of a reorganizing debt- or because the bankruptcy court may not confirm a reorganization plan without first finding that the plan is feasible,
 
 see, e.g., Fisher,
 
 29 B.R. at 544-45, the risk of default for a reorganizing debtor may be at least as great as that of a nonreorganizing corporate debtor of comparable size and structure. Courts must therefore consider the risk that the debtor will not be able to complete the reorganization in determining the prevailing market rate on deferred payments of federal tax claims. In short, before concluding that the section 6621 rate will provide the government with the present value of its federal tax claim, the court must first consider the payment period, the quality of the security, if any, and the risk of default in the particular case.
 
 [12]
 

 One final fact convinces us that the section 6621 rate, although clearly relevant to determining the prevailing market rate under section 1129(a)(9)(C), cannot be adopted as a per se rule. As the Eleventh Circuit recently noted in
 
 Matter of Southern States Motor Inns, Inc.:
 

 [T]he phrase “value, as of the effective date of the plan” appears in several oth
 
 *1289
 
 er subsections of § 1129 as well as in Chapter 13,
 
 see
 
 11 U.S.C. §§ 1129(a)(7)(B), (a)(9)(B)(i), (b)(2)(A)(i)(II), (b)(2)(B)(i), (b)(2)(C)(i), 1325(a)(4), (a)(5)(B)(ii), and applies to a wide variety of claims. Neither the statute nor the legislative history suggests that “value” as used in § 1129(a)(9)(C) should be determined simply by reference to § 6621 while “value” as used in the other sections should be determined by an analysis of market rates, and we seriously doubt that Congress intended that the § 6621 rate should be used to determine value in all of these sections.
 

 Southern States,
 
 709 F.2d at 652 n. 6. We recognize that applying a uniform interest rate as the government urges us to do might save both time and money. This is especially true in the context of determining the present value of deferred tax payments under section 1129(a)(9)(C) because that section only deals with unsecured loans that must be paid back within six years.
 
 See Southern States,
 
 709 F.2d at 652 n. 6. The language of section 1129(a)(9)(C), however, clearly compels us to conclude that the determination of what interest rate will provide the government with the present value of its claim must be made on a case by case basis.
 

 Conclusion
 

 In summary, we hold that when a plan of reorganization requires a governmental unit to receive a section 507(a)(7) tax priority claim in deferred payments, the debtor must pay the governmental unit interest on the deferred payments at the “prevailing market rate” for a loan with a term equal to the payout period in the particular case, with due consideration to the existence and quality of any security' and the risk of subsequent default. In determining the “prevailing market rate,” the interest taxpayers must pay on delinquent tax claims under 26 U.S.C. § 6621 is clearly relevant because that rate represents an attempt by Congress to charge taxpayers the prevailing market rate on delinquent tax liabilities. Courts must also consider, however, the extent to which the section 6621 rate lags behind market rates in general and whether the section 6621 rate reflects the risk, quality of any security, and term applicable in the particular case.
 

 On the record before us, we are unable to determine the appropriate rate of interest in this case. We therefore remand to the district court with directions that it enter an order remanding the case to the bankruptcy court. On remand, the bankruptcy court should hold a hearing at which time both parties can present evidence as to the prevailing market rate
 
 [13]
 
 on a comparable loan. The bankruptcy court should then determine the appropriate interest rate in light of this evidence and the factors set forth in this opinion.
 

 [1]
 

 . Section 1129(a)(9)(C) permits confirmation of a plan of reorganization if, among other things:
 

 (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—
 

 ******
 

 (C) with respect to a claim of a kind specified in section 507(a)(6) [507(a)(7)] of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.
 

 11 U.S.C. § 1129(a)(9)(C).
 

 As part of the 1984 bankruptcy amendments, 11 U.S.C. § 507(a)(6) was redesignated 11 U.S.C. § 507(a)(7). Bankruptcy Amendments and Federal Judgeship Act of 1984, ch. 353, tit. Ill, § 350(2), 98 Stat. 333, 358 (1984). The drafters of the 1984 amendments apparently neglected to revise this cross reference in section 1129(a)(9)(C). Since Congress obviously intends section 1129(a)(9)(C) to continue to refer to tax priority claims now arising under section 507(a)(7), this court will construe section 1129(a)(9)(C) to refer to section 507(a)(7) claims.
 

 [2]
 

 . The unsecured portion of the government’s claim constitutes a seventh priority claim under 11 U.S.C.A. § 507(a)(7) (West Supp.1985). As we discuss
 
 infra,
 
 section 1129(a)(9)(C) requires that the government receive interest on deferred payments of this unsecured portion of its claim. Both the parties and the bankruptcy court apparently interpreted section 1129(a)(9)(C) to also apply to the
 
 secured
 
 portion of a tax claim if the claim is of a type specified under section 507(a)(7). We reject this interpretation. Section 507(a)(7) expressly applies
 
 only
 
 to unsecured tax claims and, by its express terms, section 1129(a)(9)(C) refers only to claims arising under section 507(a)(7). Moreover, both the Eleventh Circuit and
 
 Collier’s
 
 have interpreted section 1129(a)(9)(C) to apply only to unsecured tax claims.
 
 See In re Southern States Motor Inns, Inc.,
 
 709 F.2d 647, 652 n. 6 (11th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); 5 Collier on Bankruptcy ¶ 1129.02[9], at 1129-36.4 (15th ed. 1985).
 

 The government is entitled to interest on the deferred payments of the secured portion of its claim, however, under 11 U.S.C.A. § 1129(a)(7) (West Supp.1985). Because both section 1129(a)(9)(C) and section 1129(a)(7) require that the debtor’s plan of reorganization provide the government with the present value of its claim as of the effective date of the plan, the
 
 method
 
 of determining the proper interest rate is the same under each section. We note the distinction between the secured and unsecured portions of the government’s claim, however, because, as we discuss
 
 infra,
 
 the existence and quality of any security is one factor to consider
 
 *1285
 
 in determining the rate of interest that will provide the government with the present value of its claim.
 

 [3]
 

 . As we discussed at
 
 supra
 
 note 2, the government’s claim for interest on the secured portion of its claim arises under 11 U.S.C. § 1129(a)(7).
 

 [4]
 

 . The government had also objected to the debt- or’s proposed plan on the grounds that it did not specify whether the secured portion of the government’s claim would be included in calculating the deferred payments and because the proposed payments might extend over a period of more than six years from the date of assessment in violation of 11 U.S.C. § 1129(a)(9)(C). The bankruptcy court sustained these objections and modified the plan accordingly.
 

 [5]
 

 . The Honorable Edward
 
 L.
 
 Filippine, United States District Judge for the Eastern District of Missouri, presiding.
 

 [6]
 

 . In contrast, under prior federal law secured and unsecured priority tax claims had to be paid in full before a plan of reorganization could be confirmed.
 
 See
 
 Bankruptcy Act of 1898, ch. 541, § 199, 30 Stat. 544,
 
 added by
 
 Act of June 22, 1938, ch. 575, § 1, 52 Stat. 840, 893 (11 U.S.C. § 599 (1976)) (repealed 1978).
 

 [7]
 

 . As we noted in
 
 Monnier Bros.,
 
 the treasury bill rate reflects the rate of return on a short term, low risk investment.
 
 Monnier Bros.,
 
 755 F.2d at 1339.
 

 [8]
 

 . As the district court noted, determining the proper discount rate under section 1129(a)(9)(C) is a factual inquiry. Because the bankruptcy court’s determination of the proper interest rate rested on an erroneous view of the law, however, it is subject to de novo review.
 
 In re Martin,
 
 761 F.2d 472, 474-75 (8th Cir.1985).
 

 [9]
 

 .The section 6621 rate is determined as follows:
 

 (a) In general. The annual rate established under this sectiop shall be such adjusted rate
 
 *1287
 
 as is established by the Secretary under subsection (b).
 

 (b) Adjustment of interest rate.
 

 (1) Establishment of adjusted rate. If the adjusted prime rate charged by banks (rounded to the nearest full percent)—
 

 (A) during the 6-month period ending on September 30 of any calendar year, or
 

 (B) during the 6-month period ’ ending on March 31 of any calendar year, differs from the interest rate in effect under this section on either such date, respectively, then the Secretary shall establish, within 15 days after the close of the applicable 6-month period, an adjusted rate of interest equal to such adjusted prime rate.
 

 (2) Effective date of adjustment. Any adjusted rate of interest established under paragraph (1) shall become effective—
 

 (A) on January 1 of the succeeding year in the case of an adjustment attributable to paragraph (1)(A), and
 

 (B) on July 1 of the same year in the case of an adjustment attributable to paragraph U)(B).
 

 (c) Definition of prime rate. For purposes of subsection (b), the term "adjusted prime rate charge^ by banks" means the average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System.
 

 11 U.S.C. § 6621(a), (b) & (c) (1982).
 

 [10]
 

 . The government also must pay interest on overpayments of taxes at the section 6621 rate.
 
 See 26 V.S.C.
 
 § 6611(a) (1982).
 

 [11]
 

 . As we noted at
 
 supra
 
 note 2, section 1129(a)(9)(C) only applies to unsecured tax claims. The quality of any security, however, is an important factor in determining the prevailing market rate on a secured tax claim under 11 U.S.C. § 1129(a)(7) and thus must be considered by the bankruptcy court on remand.
 

 [12]
 

 . Courts have also criticized the section 6621 rate on two other grounds. First, some courts have suggested that because the section 6621 rate is based on the prime rate, it improperly includes elements beyond compensation for deferred payment, such as profit and administrative costs, to which the government is not entitled.
 
 See Connecticut Aerosols,
 
 42 B.R. at 709 (quoting
 
 Fisher,
 
 29 B.R. at 544-45);
 
 Fi-Hi Pizza,
 
 40 B.R. at 267-68. These elements are both difficult to calculate and, on closer examination, negligible. It is true that if the debtor paid the government the proceeds of its tax claim now rather than in deferred payments, the government would not, as would a private enterprise, reinvest those funds to earn a profit. In order for the government to be as well off by accepting deferred payment of its claim, however, the government would need to borrow the amount deferred on the open market at an interest rate that would include elements of profit and administrative costs.
 

 Several courts have also criticized the section 6621 rate on the ground that it contains a punitive element.
 
 See Connecticut Aerosols,
 
 42 B.R. at 708;
 
 Fisher,
 
 29 B.R. at 545 (discussing appropriateness of section 6621 rate in determining present value under similar language in Chapter 13). We fail to see how an interest rate based on one hundred percent of the average adjusted prime rate charged by commercial lenders during a six month period contains a punitive element. Rather, as we discussed above, by charging taxpayers a rate approximating the "prevailing market rate" for a similar loan, Congress merely attempted to make taxpayers no better off by paying their taxes later rather than on time. Should Congress amend the section 6621 rate in the future to contain a punitive element, as Congress recently has done in the case of “substantial underpayment attributable to tax motivated transactions,"
 
 see
 
 26 U.S.C.A. § 6621(d) (West Supp.1985) (charging 120 percent of the rate established under 26 U.S.C. § 6621(b) on "substantial underpayment attributable to tax motivated transactions"), we agree that any punitive factor is wholly inapplicable in determining the interest rate that will provide the government with the present value of its tax claim.
 

 [13]
 

 . Sections 1129(a)(9)(C) and 1129(a)(7) require that present value be determined as of "the effective date of the plan,” which, under the terms of the debtor’s reorganization plan, will not occur until sixty days after the "confirmation date." The plan defines the confirmation date as the date on which the bankruptcy court enters an order confirming the plan, "which order is no longer subject to appeal and as to which no appeal is pending." The effective date of the plan in this case will thus be at least two years after the initial bankruptcy hearing on the government’s objection to the debtor’s proposed plan. In determining the proper discount rate on the deferred payments of the government’s tax claim, the bankruptcy court must therefore consider the prevailing market rate as of the time of the hearing on remand.