In re James M. WILMSMEYER, Carol A. Wilmsmeyer, Debtors.

Bankruptcy No. 94–41295–399.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Aug. 3, 1994.

Cynthia Eckelkamp, Union, MO, for debtors.

John V. LaBarge, Jr., St. Louis, MO, Chapter 13 Trustee.

Wendell Sherk, Thomas J. Noonan and Gary K. Burger, Jr., St. Louis, MO, for amicus.

Michael A. Gould, Kansas City, MO, for creditor.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Chief Judge.

### INTRODUCTION

This case concerns the appropriate interest rate to be applied on a fully secured claim under a Chapter 13 plan.

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(L).

### STATEMENT OF FACTS

Security Pacific Housing Services, Inc., ("SP"), an oversecured creditor, challenges the discount rate applied to its claim pursuant to James and Carol Wilmsmeyer's, ("Debtors"), Chapter 13 plan and Local Rule 13–2(g). The facts are not in dispute.

SP holds a perfected security interest in Debtors' mobile home. The contract, entered in 1981, evidences a security agreement between the parties calling for 19.18% interest on the debt. Debtors filed a Chapter 13 bankruptcy petition and filed a Chapter 13 plan which provided that SP's secured claim would be paid in full and receive interest at

the rate of 9.5% interest, as provided in Local Rule 13–2(g).

SP filed an Objection to Confirmation of Debtors' Chapter 13 plan arguing that the plan should provide for contract interest and not the discount rate provided in Local Rule 13–2(g). No other evidence, with respect to interest or discount rates, was introduced into evidence.

## DISCUSSION

### I. The Interest Rate On Fully Secured Claims in Chapter 13.

Two statutes bear on the treatment of SP's secured claim. Section 506(b) defines a secured claim by detailing the extent to which a claim will be considered secured and what rights a holder of a secured claim may have. It reads:

(b) To the extent that an allowed secured claim is secured by property the value of which, after recovery under subsection (c) of this section, is greater than the amount of such claim, **there shall be allowed to the holder of such claim interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.**

§ 506(b) (emphasis added).

Section 1325(a)(5)(B)(ii) contains the requirements for Chapter 13 plan confirmation. The applicable language of this section reads:

(a) [T]he court shall confirm a plan if—(5) with respect to each allowed secured claim provided for by the plan—(B)(ii) **the value, as of the effective date** of the plan, of property to be distributed on account of such claim **is not less than the allowed amount of such claim.**

Section 1325(a)(5)(B)(ii) (emphasis added).

### A. SP's Position

SP maintains that the applicable rate of interest would be the rate prescribed by the contract. This argument rests on two points: 1) Section 506(b) requires contract interest to be paid following confirmation of a Chapter 13 plan; and 2) contract interest best reflects the present value requirement of § 1325(a)(5)(B)(ii) because it is a rate agreed

to by the parties at the time the purchase was made. "The rate of interest required to provide an allowed secured claim holder present value under § 1325(a)(5)(B) may or may not be the rate of interest allowed as part of an oversecured claim under § 506(b)." SP's Brief at 5 *citing* Honorable Keith M. Lundin, U.S. Bankruptcy Judge, *Chapter 13 Bankruptcy*, Volume 2, p. 5–155.

### B. The Debtors' and the Chapter 13 Trustee's Position

The Debtors and the Chapter 13 Trustee ("Trustee") do not dispute SP's entitlement to post-petition interest under § 506, nor do they dispute that prior to Chapter 13 plan confirmation, contract rate of interest (*i.e.* 19.18%) should apply. They allege, however, that following confirmation of the plan, § 1325's present value language encompasses something entirely different from contract rate interest.

The present value language of § 1325 implies a percentage or discount rate which will preserve the value of the property as of the effective date of the plan. "The requirement acknowledges that in a Chapter 7 bankruptcy, the creditor would have received its collateral or the value of the collateral in a relatively short time after the bankruptcy was filed or, if no bankruptcy had been filed, the creditor could have immediately begun to repossess the collateral and recover the value from its sale." Trustee's Brief at 3.

Under Chapter 13, however, the creditor must wait from three to five years in order to receive money sufficient to repay the value of its collateral. "[I]n an inflationary economy one dollar today is greater than one dollar tomorrow," thus, the creditor must receive interest or a discount rate, to compensate for the loss of the time value of his money. *In re Hardy*, 755 F.2d 75, 77–78 (6th Cir.1985). The Trustee and the Debtors argue that Local Rule 13–2(g) provides the best indication of the appropriate rate to maintain the present value of a secured claim. In this case, Local Rule 13–2(g) sets the discount rate at 9.5%.

### C. Local Rule 13–2(g)

Local Rule 13–2(g) was developed by this Court as part of a larger set of Local Rules

governing Chapter 13 practice. The rule is one of administrative, judicial, and economic convenience; furthermore the formula was developed as one which best reflects the time value of money as well as existing market conditions.

In this District nearly 4,000 Chapter 13 cases are filed every year. Without reference to a standard discount rate by which the § 1325(a)(5)(B)(ii) present value requirement can be established, this Court would entertain litigation as to the appropriate rate at nearly every Chapter 13 confirmation hearing.[1] The Trustee, whose duty it is to pay all creditors pursuant to a Chapter 13 plan, would similarly suffer an extreme inconvenience as each secured claim paid under a confirmed Chapter 13 plan would require a different calculation. To avoid these burdens on limited resources and to save all parties costly legal fees, Local Rule 13–2(g) was established and implemented. It provides in part:

> Absent proof to the contrary, ... [t]he applicable interest rate shall be determined by the Clerk of the Court semiannually ... the interest rate shall be the Wall Street Journal prime rate ... plus 3½%.

*II. Section 506(b) does not require contract interest following Chapter 13 plan confirmation.*

■ The Supreme Court has provided guidance as to how courts may read § 506(b). In *Rake v. Wade*, the Supreme Court addressed the question of whether an oversecured mortgagee was entitled to interest on its pre-petition home payment arrearage. —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In analyzing this issue, the Court noted that § 506(b) requires payment of interest on oversecured claims "until payment of the secured claim [such as in a

Chapter 7 liquidation] or until the effective date of the plan [such as in a Chapter 11, 12, or 13 plan of reorganization]." *Id.* at ——, 113 S.Ct. at 2190. The Court also stated, without comment to the contrary, that "506(b) applies only from the date of filing through the confirmation date." *Id.*

This guidance from the Supreme Court is bolstered by other courts that have addressed the same issue and have determined that the contract rate accrues to the effective date, at which time the interest is added to the prepetition claim and the creditor thereafter receives the present value of that sum or amount. *Landmark Financial Services v. Hall*, 918 F.2d 1150, 1154 (4th Cir.1990); *In re Laguna*, 114 B.R. 214, 215 (9th Cir. BAP 1990); *In re Hall*, 117 B.R. 425, 427 (Bankr. S.D.Ind.1990); *In re Gladdin*, 107 B.R. 803, 806 (Bankr.M.D.Ga.1989); *In re LaLonde*, 65 B.R. 237, 241 (S.D.Ohio 1986).

This Court believes that the language of § 506(b) should not apply beyond Chapter 13 plan confirmation. The Supreme Court has indicated that § 506(b)'s purpose is to determine the extent and allowance of secured claims and case law on the very issue involved here supports a similar interpretation.

*III. Contract rate interest does not reflect the present value requirement of § 1325(a)(5)(B)(ii) in this case.*

■ SP maintains that the 19.18% interest rate in its contract better reflects the present value requirement of § 1325(a)(5)(B)(ii). The Eighth Circuit addressed this argument in *In re Monnier Brothers*, 755 F.2d 1336 (1985). *Monnier* was a Chapter 11 case in which the Circuit Court examined a Chapter 11 provision nearly analogous to the present value provision of § 1325(a)(5)(B)(ii).[2] While contract rate interest was used in *Monnier*, its application was hardly a ringing endorsement for its application in this case.

---

1. Not every secured claim is a consensual claim, thus even if SP's argument that the contract rate of interest would apply, there would still be substantial uncertainty as to the appropriate discount rate for all other secured claims such as judgment and non-consensual liens.

2. Compare § 1129(b)(2)(A)(i)(II) which provides in part: "[w]ith respect to ... secured claims, the plan provides—that each holder of a claim ... receive ... deferred cash payments totalling at least the allowed amount of such claim, **of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property.**" (emphasis added).

The Eighth Circuit in *Monnier* held that the district court did not err in confirming a contract rate of interest. The Chapter 11 plan provided for interest at the U.S. treasury bill rate, but the debtor could provide no support for why that rate adequately compensated the creditor. "Lacking any evidence correlating other rates with the 'coerced loan' contemplated by the plan, the district court did not err in reinstating the contract rate of interest." *Id.* at 1339. That the circuit court could not find error in the district court's use of a contract rate of interest, when no other competing discount rate was presented, should not be interpreted as a positive interpretation that the Code requires contract rate interest.

■ The *Monnier* court did find that an appropriate discount rate should compensate a creditor for the time value of its money and the risks to its principal. *Id.* The court cited a passage from *Collier on Bankruptcy* which states that "the appropriate discount rate must be determined" by considering "the prevailing market rate for a loan of a term equal to the payout period, with due consideration for the quality of the security and risk of subsequent default." *Monnier* at 1339, *citing Collier on Bankruptcy,* ¶ 1129, at 1129-65. The treasury bill rate, used by the debtor in *Monnier,* reflected a rate of return available on short term, low risk investments. *Id.*

In this case, the rate which best expresses the appropriate discount rate is the 9.5% provided by Local Rule 13–2(g) as it was designed to consider the prime lending rate on the date of the filing of the Chapter 13 plan and a cushion of 3½% to ensure that the secured creditor is protected from risks to its principal.[3] To the contrary, the 19.18% contract rate was not intended to merely preserve the status quo, as § 1325(a)(5)(B)(ii) requires, but instead was intended to generate a substantial profitable return on SP's investment.

Moreover, SP's argument that the loan was consensual and was the result of the bargain between the parties, does not indicate that the parties decided that the 1981 contract rate of 19.18% represents the 1994 discount rate. In fact, under the circumstances in this case, the 19.18% rate does not seem to represent much of a bargain when one party is a sophisticated creditor and the other party is a non-dealer consumer mobile home buyer. Clearly these facts help to distinguish this case from *Monnier,* where the debtor filed bankruptcy 6 months before the first installment of principal was due. Also, the agreement between the agri-partnership (debtor) and creditor was found to be "an arms length bargain between *businessmen." Id,* at 1339. These distinguishing facts militate in favor of applying the 9.5% as established by Local Rule shortly before the Debtors' bankruptcy filing rather than the 19.18% derived from the 1981 contract.

It is the opinion of this Court that based upon the application of law to all the facts in this case, the appropriate discount rate required under § 1325(a)(5)(B)(ii) is the 9.5% established by Local Rule 13–2(g).

## CONCLUSION

For these reasons, it is

ORDERED that Security Pacific Housing Services, Inc.'s Objection to Confirmation is OVERRULED and the Debtors' shall file an Amended Chapter 13 plan, consistent with this Memorandum Opinion within 10 days.

---

3. This formula was arrived at after taking into account all of the factors in *United States v. Neal Pharmacal Co.,* 789 F.2d 1283, 1289 (8th Cir. 1986) (A discount rate sufficient to meet the present value requirement of section 1129(a)(9)(C) should reflect the risk of default, quality of security, and the term of the loan); and *Monnier.*