**In re Paul Bernard GORHAM, Jr., and Dana Jai Gorham, Debtors.**

**No. 99–44470.**

United States Bankruptcy Court, W.D. Missouri, Western Division.

April 14, 2000.

Susan Bratcher, Gladstone, MO, for debtor.

Richard Fink, Kansas City, MO, trustee.

## AMENDED MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This case comes before the Court at this juncture on Creditor Household Automotive Finance's Objection to Confirmation of Debtors' Plan. Household Automotive Finance ("HFAC") objects to Debtors' proposed treatment of its secured claim. Specifically, HFAC objects to the Plan's proposal to pay the rate of interest, established by Local Rule 3084–1.E, on its claim. The Court held a hearing on HFAC's Objection at the Federal Courthouse in Kansas City, Missouri, on February 28, 2000.

Upon consideration of the pleadings submitted, evidence adduced at trial, and relevant law, the Court is now ready to issue its Findings of Fact and Conclusions of Law as required by Federal Rule of Bankruptcy Procedure 7052.[1]

### FACTUAL BACKGROUND

The Debtors, Paul B. Gorham and Dana J. Gorham, filed for protection under Chapter 13 of the Bankruptcy Code on November 17, 1999, and HFAC filed a proof of claim in the bankruptcy on December 16, 1999. HFAC's claim arises from its financing of a 1998 Buick Skylark, purchased by Paul Gorham on January 20, 1999. HFAC financed $11,888.45 of the

---

**1.** The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L).

car's $12,840.00 purchase price at a rate of 20.95%. The parties stipulated to a current value of $9,075.00 for the car. The only evidence and argument presented at the February 28, 2000, hearing concerned the issue of the appropriate interest rate to be applied to HFAC's secured claim.

## DISCUSSION

The sole issue before the Court is one that the Court recently addressed, at some length, in *In re Ehrhardt,* 240 B.R. 1 (Bankr.W.D.Mo.1999). That issue is whether the rate of interest determined by Local Rule 3084–1.E,[2] currently 9%, is the appropriate measure of a market rate of interest for purposes of ensuring that the payments provided to a secured creditor, pursuant to a Chapter 13 Plan, have value, as of the effective date of the plan, at least equal to the allowed amount of that creditor's secured claim as required by 11 U.S.C. § 1325(a)(5)(B)(ii). The creditor in this case, HFAC (who, interestingly, is the same creditor as in *Ehrhardt*), contends that the appropriate market rate should be determined by examining the particular market in which the Debtor would be seeking a similar loan, and that by using this method the appropriate interest rate is 20.95%.

As might have been expected, the Court declines to deviate from the position stated in *Ehrhardt* and maintains that Rule 3084–1.E of the Local Rules of Practice for the United States Bankruptcy Court for the Western District of Missouri, which determines the rate of interest used to calculate the § 1325(a)(5)(B)(ii) value of secured claims, is the appropriate measure of market rate in Chapter 13 bankruptcy cases. *Ehrhardt, supra.* Because of the complexity and importance of this issue and the need to address the particular issues

raised in this case, however, we take this opportunity to expand on the position enunciated in *Ehrhardt.* We pause first to review briefly the pertinent legal framework within which this issue arises.

■■■ In a Chapter 13 bankruptcy, a debtor has at least three options with regard to property in which a creditor holds a security interest:[3] (1) he may propose a treatment of the secured claim that is satisfactory to the secured creditor pursuant to § 1325(a)(5)(A); he may retain the collateral and pay the creditor the value of the property securing the claim pursuant to § 1325(a)(5)(B); or he may surrender the property to the secured creditor pursuant to § 1325(a)(5)(C). In this case, we are concerned with the second option, colloquially referred to as the "cram-down" option.

In a Chapter 13 cram-down, the debtor is permitted to retain property in which a creditor holds a security interest, even over creditor's objection, so long as two conditions are met: (i) the secured creditor must retain a continuing lien on the property; and (ii) the secured creditor must receive from the debtor "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim [which shall be] not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(i) and (ii). The term "value" refers to the "present value" of the allowed claim. *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 957, 117 S.Ct. 1879, 1882–83, 138 L.Ed.2d 148 (1997); *Metrobank v. Trimble (In re Trimble),* 50 F.3d 530, 530–31 (8th Cir.1995). Present value is a concept that is used to assign a value to a claim, above the current fair market value of the property (or in this context, replacement-value

---

**2.** *See infra* note 4 for text of local rule.

**3.** Some courts, including this one, have recognized a fourth option that allows a debtor to retain the collateral without reaffirming the debt or redeeming the collateral, so long as the debtor remains current on installment payments. *In re Manring,* 129 B.R. 198

(Bankr.W.D.Mo.1991) (Koger, J.). *See also, In re Laubacher,* 150 B.R. 200 (Bankr. N.D.Ohio 1992); *In re Harper,* 143 B.R. 682 (Bankr.W.D.Tex.1992). *Cf., In re Gerling,* 175 B.R. 295 (Bankr.W.D.Mo.1994) (Federman, J.)

of the property), that will place a secured creditor in an economic position equivalent to the one it would have occupied had it received its allowed secured amount immediately, rather than over the life of the Plan. *See* Lawrence P. King, 8 COLLIER ON BANKRUPTCY ¶ 1325.06[3][b][iii][B] at 1325–35 (15th ed. rev.1997). Present value is achieved by paying the secured creditor interest on the claim, and that interest rate is called the discount rate. In the Eighth Circuit, the discount rate is to be set at the "market rate." *See United States v. Roso (In re Roso)*, 76 F.3d 179, 180 (8th Cir.1996); *see also, In re Fisher*, 930 F.2d 1361 (8th Cir.1991) (relying on *Monnier Bros.* to apply market rate approach in Chapter 12); *United States v. Doud*, 869 F.2d 1144 (8th Cir.1989) (same); *In re Monnier Bros.*, 755 F.2d 1336 (8th Cir.1985) (adopting market rate approach in Chapter 11 context). Overall, the meth-od for determining the discount rate to be applied to secured claims in Chapter 13 appears simple enough, but the devil is in the details.

In *Ehrhardt*, we discussed the various methods courts have used to determine market rate and concluded that the application of the local rule represents the best alternative. *Ehrhardt*, 240 B.R. at 4–11; *see also, General Motors Acceptance Corp. v. Valenti (In re Valenti)*, 105 F.3d 55, 53–64 (2d Cir.1997) (discussing the various methods in detail); Monica Hartman, *Selecting the Correct Cramdown Interest Rate in Chapter 11 and Chapter 13 Bankruptcies*, 47 UCLA L.REV. 521 (1999). Local Rule 3084–1.E is predicated on the market rate approach and calculates market rate by combining a riskless investment component (the interest rate of a 30-year treasury bond) with a 3% risk component.[4] The resulting figure is called the

---

4. The pertinent text of Rule 3084–1 provides:
RULE 3084–1. CHAPTER 13 PROOFS OF CLAIM; OBJECTIONS TO CLAIMS
\*\*\*
D. Secured Claim. A secured claim must state a fair market value for each item of collateral. The trustee will use the creditor's fair market value, or debtor's value if the creditor does not provide one. Listing the amount of debt on the "secured" line of the claim does not constitute providing the fair market value.
E. Interest on Secured Claims. All filed and allowed secured claims will be paid interest unless the plan/plan summary specifically provides for "zero" interest.
1. Filed and allowed over secured claimants shall receive their contract rate of interest, if provided on or with the proof of claim, from the date of the petition up to the date of confirmation. From the date of confirmation forward, filed and allowed oversecured claimants shall receive the posted "CHAPTER 13 RATE." If the contract rate is not provided on the proof of claim, such a claimant will receive the posted "CHAPTER 13 RATE" from the date of the petition forward.
a. An oversecured claim is one in which the fair market value of the collateral exceeds the total amount of the claim.
2. Filed and allowed undersecured claimants and filed and allowed fully secured claimants shall receive the posted "CHAPTER 13 RATE" from the date of the petition forward on the secured portions of their claims.

a. A fully secured claim is one in which the fair market value of the collateral equals the total amount of the claim.
b. An undersecured claim is one in which the fair market value of the collateral is less than the total amount of the claim.
3. A claim secured only by real estate which is the debtor's principal residence, shall receive its contract rate of interest from the date of the petition forward, if provided on the proof of claim, otherwise it will receive the posted "CHAPTER 13 RATE."
a. For adjustable rate mortgages, the trustee shall use the interest rate provided in the plan/plan summary. If the debtor's plan/plan summary does not provide an interest rate, the trustee shall use the appropriate posted "CHAPTER 13 RATE."
b. If the adjustable rate changes, it is the responsibility of the debtor or the creditor to notify the trustee of the new interest rate so that the claim can be adjusted accordingly.
4. The posted "CHAPTER 13 RATE" shall be determined by the standing Chapter 13 trustee for the Western District of Missouri semi-annually as follows:
a. July 1 to December 31: For cases with the initial plan filed between July 1 and December 31, the interest rate shall be the 30 year treasury bond rate as of June 1, plus 2% nominal interest rate per annum. The standing Chapter 13 trustee shall make the rate for the ensuing six-month period available to the Clerk of the Bankruptcy Court for posting for the first business day following June 10.

"Chapter 13 Rate." The reasons why we concluded that the application of Chapter 13 Rate is appropriate in cram-down situations, briefly summarized, are as follows.

First of all, Local Rule 3084–1.E flows naturally from existing Eighth Circuit precedent on the issue of the applicable interest rate for secured claims in reorganization bankruptcies (Chapters 11, 12, and 13). As mentioned above, the Eighth Circuit has repeatedly endorsed the market rate approach, and, perhaps more importantly, the Eighth Circuit has given its explicit approval to a formula used to determine market rate almost identical to that employed by the local rule. In *In re Doud*, the Eighth Circuit approved of a bankruptcy court's use of a market rate comprised of a riskless investment component, in that case the yield on a treasury bond with a remaining maturity matched to the average amount outstanding during the term of the allowed claim, plus 2% to compensate the creditor for risks involved in the reorganization plan. *United States v. Doud*, 869 F.2d 1144 (8th Cir.1989). The only differences between that formula and the one used in Local Rule 3084–1.E, are that the local rule uses the 30–year United States treasury bond as the standard riskless component (adjusted bi-annually), and provides creditors with a slightly higher 3% adjustment to compensate for the risks involved in Chapter 13 cases. These differences are not significant.

In addition, we comment that Local Rule 3084–1.E has already been specifically approved by the Eighth Circuit Judicial Council.[5] In *Ehrhardt* we reviewed the evolution and various iterations of Local Rule 3084 and the accompanying orders of the Eighth Circuit Judicial Council approving those rules, so we will not do so again here. We will point out, though, that the current version of the local rule governing the Chapter 13 rate was approved subsequent to the decisions in *Monnier Bros., Neal Pharmacal Co., Doud*, and *Roso*, all of the cases setting forth the Eighth Circuit's position, to the extent that it has, on the applicable rate in cram-down situations. This can be interpreted as an indication of the Eighth Circuit's intention to endorse a rule that is not only consistent with its previous rulings, but one that further simplifies the issue in Chapter 13 situations.

■ Admittedly, the use of the Local Rule in all Chapter 13 cram-down situa-

b. January 1 to June 30: For cases with the initial plan filed between January 1 and June 30, the interest rate shall be the 30 year treasury bond rate as of December 1 of the preceding 15 year, plus 2% nominal interest rate per annum. The standing Chapter 13 trustee shall make the rate for the ensuing six-month period available to the Clerk of the Bankruptcy Court for posting for the first business day following December 10 of the preceding year.
5. THE POSTED "CHAPTER 13 RATE" IN EFFECT AT THE TIME OF FILING OF THE INITIAL PLAN SHALL REMAIN IN EFFECT THROUGHOUT THE ENTIRE LIFE OF THE CASE.
6. This rule goes into effect for all cases in which the initial plan is filed on or after July 1, 1997. For cases in which the initial plan is filed prior to July 1, 1997, the trustee shall use Local Rule 13.06E as it stood prior to this amendment.
F. Objections. It shall be debtor's duty and not the trustee's to file objections to claims. The debtor must serve the objection on the claimant, claimant's attorney and the trustee. Claimants must serve a copy of claims on debtor's attorney.

5. The following is the text of the Eighth Circuit's order approving the revision of the local rules that included Rule 3084–1.E.

EIGHTH CIRCUIT JUDICIAL COUNCIL ORDER
I hereby certify that the Eighth Circuit Judicial Council has approved the renumbered local rules of practice for the U.S. Bankruptcy Court, Western District of Missouri, adopted February 13, 1997, and effective April 14, 1997.
/s/ June L. Boadwine
June L. Boadwine, Circuit Executive
St. Paul, Minnesota
May 30, 1997
cc: Judicial Council Members Chief Judge Frank W. Koger Robert F. Connor, Clerk Administrative Office
Approval was given by the Rules and Bankruptcy Committees.

tions appears to conflict with the Eighth Circuit's directive to determine the market rate on "a case-by-case basis." *See Monnier Bros.*, 755 F.2d at 1339 (8th Cir.1985); *United States v. Neal Pharmacal Co.*, 789 F.2d 1283, 1289 (8th Cir.1986). However, the strength of this directive and its applicability to the Chapter 13 context should not be overstated. In *Monnier Bros.* and *Neal Pharmacal*, the Eighth Circuit appeared to stress the "case-by-case" aspect of the market rate approach. *Monnier Bros.*, 755 F.2d at 1339; *Neal Pharmacal Co.*, 789 F.2d at 1289. But, in *Doud*, we see a retreat from this position:

> This court in *Neal Pharmacal* ultimately concluded that "the determination of what interest rate will provide the government with the present value of its claim must be made on a case by case basis." This language does not preclude the *Doud* market rate formula, but rather reflected the specific subject matter of *Neal Pharmacal*.

*Doud*, 869 F.2d at 1146.

In *Doud*, the Eighth Circuit Court of Appeals established a fair, uniform and workable approach to the complicated issue of determining market rate, and likely recognized that some retreat from the case-by-case analysis was necessary in order for the "*Doud* formula" to continue as a viable method for calculating market rate in Chapter 12 cases. As Judge Venters of this Court recently commented: "[A]pplying the *Doud* formula should provide a degree of uniformity and predictability on which both creditors and debtors can rely in the future as they negotiate the terms of reorganization plans." *In re Lockard*, 234 B.R. 484, 495 (Bankr. W.D.Mo.1999) (applying *Doud* formula in Chapter 12 case). This need for predict-

ability, uniformity, and by extension, judicial efficiency and economy recognized by Judge Venters in the Chapter 12 context, is all the more apparent in the context of Chapter 13, and constitutes another reason we upheld the propriety and application of Local Rule 3085–1.E. *Ehrhardt*, 240 B.R. at 11.

In general, Chapter 13 is characterized (and some might say cursed) by a tremendous volume of cases and a paucity · of resources. The consequent administrative problems peculiar to Chapter 13 necessitate different treatment than in Chapter 11 or 12 cases. In particular, where a case-by-case analysis of the appropriate market rate might be appropriate and *feasible* in Chapter 11 and 12 cases, the *Doud* formula, as codified in the local rule, provides the only truly workable alternative for Chapter 13 cases.[6]

In *In re Wilmsmeyer*, 171 B.R. 61 (Bankr.E.D.Mo.1994), the Honorable Barry S. Schermer upheld. and applied the rate as provided under the Eastern District of Missouri's local rule which is similar to our local rule. His comments illustrate the need for a standardized Chapter 13 rate.

> Local Rule 13–2(g) was developed by this Court as part of a larger set of Local Rules governing Chapter 13 practice. The rule is one of administrative, judicial, and economic convenience; furthermore the formula was developed as one which best reflects the time value of money as well as existing market conditions.
>
> In this District nearly 4,000 Chapter 13 cases are filed every year. Without reference to a standard discount rate by which the § 1325(a)(5)(B)(ii) present value requirement can be established, this

---

**6.** One additional reason that a case-by-case determination of market rate is not necessary in Chapter 13 cases is that Chapter 11 and 12 cases have a greater degree of inherent risk associated with them. Generally, Chapter 13 debtors generally have a bit more control over their own circumstances, whereas Chapter 11 debtors are subject to the vagaries of

the business world, and Chapter 12 debtors are at the mercy of "weather, plant and animal diseases, market prices, and various other factors that are far beyond their power to control." *Lockard*, 234 B.R. at 493. The frequent use of wage orders (also in place for these Debtors) further reduces the risk in Chapter 13 bankruptcies.

Court would entertain litigation as to the appropriate rate at nearly every Chapter 13 confirmation hearing. The Trustee, whose duty it is to pay all creditors pursuant to a Chapter 13 plan, would similarly suffer an extreme inconvenience as each secured claim paid under a confirmed Chapter 13 plan would require a different calculation. To avoid these burdens on limited resources and to save all parties costly legal fees, Local Rule 13–2(g) was established and implemented.

*Id.* at 62–63 (footnote omitted).

Judge Schermer focused on the additional burden that would be placed on the Trustee in the absence of a local rule, and while this burden would certainly increase, it is not the only burden that would increase. The debtor, faced with the prospect of costly litigation, would be at the mercy of the creditor forced to pay whatever rate the creditor proposed or have to turn over the property. It is also highly unlikely that secured creditors would want to be burdened with additional litigation costs to squeeze a little more out of an already very dry lemon, i.e., the debtor (or the car, perhaps).

Having reiterated the position developed in *Ehrhardt,* we now turn to the arguments of HFAC, who, once again, questions the propriety of the local rule.

The gist of HFAC's argument is that "market rate" must be determined by reference to the "market" in which HFAC makes loans and the Debtor would hypothetically be seeking a loan. HFAC contends that the Chapter 13 Rate does not accurately reflect this market. To this end, HFAC offered evidence of Paul Gorham's financial condition and the types of loans that would be available to him if he were to go out into "the market" to obtain

similar financing. HFAC's witness, Lisa Jury, the Regional Sales Manager for HFAC, testified that the best rate HFAC or two other similar finance companies, National Auto Finance and Ford Fairlane Credit, would give Paul Gorham for a loan would be at or about 20.95%. This determination, she explained, is based on a review of the borrower's income, credit history, and credit rating; although, on cross examination she admitted that regardless of his credit history, the fact that he had been through a bankruptcy made him eligible *only* for their highest rate of 20.95%.[7]

The Court agrees with the proposition that the Chapter 13 rate does not reflect the "market" presented by HFAC. We do, however, strongly disagree with HFAC's contention that its proposed market is the one to which we should look when determining market rate. Putting aside the Court's stated position that a detailed examination of every debtor and every "market" is unnecessary, counterproductive and simply unfeasible in Chapter 13 situations, we find that HFAC's proposed market from which its "market rate" is derived, is inherently flawed. The Court's objection to HFAC's hypothetical market is twofold: first, HFAC misunderstands the basic premise of the market rate formula as it has been developed in the Eighth Circuit; and second, HFAC's hypothetical market is inherently biased and arbitrary, and therefore, should not be used to determine present value for purposes of § 1325.

■ Simply stated, the purpose of the market rate approach as enunciated by the Eighth Circuit is to give the creditor the present value of its claim plus a risk premium. *Doud,* 869 F.2d at 1146. The purpose is not to give the creditor his profit,[8] to account for overhead costs, or to take into account the fact that other loans made

---

7. It is ironic that HFAC is now arguing that the market rate should be determined on a case-by-case basis, but its own practice is to charge a fixed 20.95% rate to all Chapter 13 debtors.

8. *In re Value Recreation, Inc.,* 228 B.R. 692, 697 (Bankr.D.Minn.1999) ("[P]resent value in the bankruptcy environment, however, does not include profit.") (citing *In re Fisher,* 29 B.R. 542, 546 (Bankr.D.Kan.1983)).

by the creditor may not be collectable.[9] But, these factors are the ones HFAC admits contribute to the formulation of its market rate. HFAC's interpretation of the market rate approach is based more on (contractual) expectation interest than on the concept of present value. And while the Court recognizes that the Chapter 13 Rate may not give the secured creditor the full interest rate for which it had originally bargained, it will, "in most cases, result in a fair rate of return for the secured creditor." *Lockard,* 234 B.R. at 495.

Moreover, the Bankruptcy Code already contemplates that a secured creditor's claim will be treated differently before confirmation than after confirmation. Before confirmation, an oversecured creditor is entitled to the contract rate of interest on its claim, *see* 11 U.S.C. § 506(b); *In re Campbell,* 234 B.R. 101, 103–04 (Bankr. W.D.Mo.1999), but, as discussed above, after confirmation in a Chapter 13 bankruptcy, a secured creditor is only entitled to the present value of its claim (achieved in this jurisdiction through the use of the Chapter 13 Rate). The present value of the claim should not be higher than the contract rate,[10] and is usually lower. The only situation in which the contract rate would be the same as the present value discount rate is where the contract rate did not take into account profit, overhead and risk. "If it could be said that there exists no risk of the claim going unsatisfied, the present value would be the present return on a risk free investment of a similar term with no enhancement." *Value Recreation, Inc.,* 228 B.R. at 696. In this case, HFAC is proposing a market rate that is the same as the contract rate, 20.95%, but according to the testimony of HFAC's expert, its rate takes into account risk, profit and overhead. Therefore, sub-tracting any amount for profit and overhead, the present value discount rate plus risk premium would have to be less than 20.95%. How much less? Any amount would undermine HFAC's position, but the specific amount would depend on the calculation of the risk premium. HFAC contends that lending to Chapter 13 debtors is very risky, but this and other courts, *see e.g., In re Mitchell,* 39 B.R. 696, 702 (Bankr.D.Or.1984); *In re Fisher,* 29 B.R. 542, 544–45 (Bankr.D.Kan.1983), believe that the risks involved in lending money to Chapter 13 debtors may actually be somewhat less than it would be for borrowers of equivalent credit worthiness outside of bankruptcy, inasmuch as "collection costs are . . . eliminated or reduced because the creditor has received a continuing judicial remedy which, upon default, allows the creditor to bypass much of the collection process." C. Frank Carbiener, *Present Value in Bankruptcy: The Search For an Appropriate Cramdown Discount Rate,* 32 S.D.L.Rev. 42, 61 (1987). At any rate, the fact remains HFAC's proposed market rate is too high, whereas the Chapter 13 Rate established by Local Rule 3084–1.E provides a rate that comports with the Eighth Circuit's definition of market rate, does not take into account profit and overhead and incorporates a fair and reasonable risk component.

The Court's second objection to HFAC's proposed market is that it is biased and arbitrary. Upon questioning by the Chapter 13 Trustee and by the undersigned, HFAC's expert witness shed some light on the biases inherent in HFAC's market rate. For example, when posed with a hypothetical financial profile, remarkably similar to that of the undersigned, the expert for HFAC admitted that the lowest

---

9. In a sense, HFAC is trying to take two bites from the apple here. HFAC's witness testified the HFAC, as a sub-prime lender charges higher interest rates than other "prime" lenders because it has to make up for the loans that go into default and borrowers that go into bankruptcy. Allowing HFAC to charge its highest rate of interest to debtors in Chapter 13 is tantamount to letting it charge a second time for a risk it has already factored in to all of its loans.

10. *See Hardzog v. Federal Land Bank of Wichita,* 901 F.2d 858, 860 (10th Cir.1990).

interest rate they could offer the hypothetical borrower was 10.9%, but promptly added, "your not the customer we're looking for." The expert went on to suggest that this hypothetical borrower with solid financial credentials would be able to obtain a lower interest rate elsewhere, even as low as 1.9% (as has been advertised on television). In other words, the market rate for the hypothetical borrower at HFAC is 10.9%, but would be significantly lower at a different lender. This discrepancy begs the question, if the hypothetical borrower declared bankruptcy under Chapter 13 of the Code and sought to cram-down a secured claim, what market should the Court look at to determine that market rate?

The answer for this Court is neither, since we uniformly apply the Chapter 13 Rate. But, the specific answer to the question is not as important as what the question reveals. It reveals the fact that *every* market is biased and arbitrary in some way; there is no one market and there is no one market rate.[11] HFAC's market is skewed higher because they have made business out of lending to high risk borrowers, whereas other lenders' rates might have lower rates because they only lend to low risk borrowers. The implication of this is that each lender's market rate is more than an approximation of an individual borrower's circumstances, it is also a reflection of the lender's loan portfolio, operating costs, and "a host of other factors." *Hardzog*, 901 F.2d at 860. The Court recognizes that, to some degree, the local rule's Chapter 13 Rate is also biased and arbitrary. However, a certain degree of bias is inevitable, and the amount of bias is minimized by pegging the. Chapter 13 Rate to an objective standard, the 30-year

treasury bond rate. Furthermore, what bias remains is a function of the need for judicial economy in Chapter 13 bankruptcies, the text of the Bankruptcy Code, and the policies underlying the Code, namely the balance between giving debtors a fresh start and protecting the interests of creditors.

In summary, the Court states that the application of Local Rule 3084–1.E is appropriate because it comports with existing Eighth Circuit precedent on the issue of the applicable interest rate for secured claims in reorganization bankruptcies, has been approved by the Eighth Circuit Judicial Council, and provides a fair and workable method for determining market rate in the special circumstances presented by Chapter 13 bankruptcies.

For the foregoing reasons, Creditor HFAC's Objection to Confirmation of Debtors' Plan is DENIED. Accordingly, the Debtors' Amended Chapter 13 Plan is hereby CONFIRMED.

SO ORDERED.

---

**11.** In this vein, one Court, noting the complexity in determining market rate, gave the following list of factors that comprise a market rate of interest:

A lender, in establishing interest rates to be charged to a borrower, will consider and utilize many factors, including what the competition charges, its cost of funds, the condition of the local economy, its over-head, the character of the borrower, the capacity of the borrower to repay, the value of the collateral, the costs of servicing the loan, the status of the lender's loan portfolio, the lender's ratio of loans to assets, its liquidity, and a host of other factors.
*Hardzog v. Federal Land Bank of Wichita (In re Hardzog)*, 901 F.2d 858, 860 (10th Cir. 1990).